Nos. 36,353 to 36,358, incl.

ABEL O. ANDERSON et al., *Appellees*, v. BERT HEDGES, GEORGE G. GARD and BROTHER BUIS, as Members of The Board of Managers of the Kansas Soldiers' Home, *Appellants*.

(165 P. 2d 425)

Opinion filed January 26, 1946.

*C. H. Pugh,* of Wichita, argued the cause, and *A. B. Mitchell,* attorney general, and *Leon W. Lundblade,* assistant attorney general, were on the briefs for the appellants.

*E. C. Minner,* of Dodge City, was on the briefs for the appellees.

The opinion of the court was delivered by

Hoch, J.: We are asked to pass upon the validity of an order by the Board of Managers of the Kansas Soldiers' Home discharging certain members of the home. Upon appeal to the district court by certain persons so discharged the trial court found against the board, and the board appeals.

In view of the conclusion presently to be stated it is only necessary to summarize the pertinent facts. By resolution, dated July 27, 1944, and signed "Bert A. Hedges, Secretary of the Board of Managers" and "Attest: G. E. Gard, President of the Board of Managers" the acting commander was directed to notify certain members and their wives that they were being "discharged from membership in the Kansas Soldiers' Home, by reason of changes in their financial and/or physical condition as provided under the statutes, 76-1908" such discharge to take effect as of August 1, 1944, but with regular subsistence allowances for the month of August and the privilege of remaining in the home during September and October without payment of rent. It is stated that this resolution was passed after two hearings, with due notice to interested parties, but we are not here determining any facts in that regard. Formal notice of discharge signed by Nolen E. Bond, acting commander and dated August 7, 1944, appears to have been sent to those affected by the order. Recital in the notices indicates that those affected were veterans with wives but with no other dependents and who had monthly incomes of $75 or more. From this action by the board a number of the members affected took appeals

to the district court. The board moved to dismiss the appeals on the ground that the court was without jurisdiction to hear them. The motion was denied and trial before the court, without a jury, proceeded, the court having first ruled that the burden of proof rested upon the board. After receiving evidence and hearing argument of counsel the court made certain findings of fact contrary to the board's findings and also found that the board had abused its discretion. Appeals to this court, by the board, in six separate actions followed. These appeals, all involving the same issues, were here consolidated.

The appellant board's principal contentions are that the appeals to the district court should have been dismissed for the reason that they were filed too late; that the court erred in placing the burden of proof upon the board; that the demurrer to the evidence of appellees should have been sustained, and that the court's finding that the board had abused its discretion is unsupported by the record.

Before considering these contentions we are faced with the question of whether an appeal lies to the district court from an order of the board. Do the pertinent statutes contemplate appellate review of the acts of the board, or does the remedy lie solely in proceedings in injunction, mandamus or quo warranto in case the board acts capriciously or arbitrarily, refuses to discharge the duties imposed upon it by law or exceeds its authority? If appellate review of the board's acts is not provided for then the district court had no jurisdiction to entertain the appeals and the motion to dismiss should have been sustained.

At the times here involved the statutes relating to the establishment, maintenance and management of the home were to be found in G. S. 1935, 74-2301 to 74-2304, and 76-1901 to 76-1926 as modified by certain amendments shown in G. S. 1943 Supplement, including 76-1904 to 76-1935. Certain additional amendments which were subsequently made appear in Laws of 1945, chapter 344, but are not here material and need not be specifically noted.

It is not necessary to set out in full the statutory provisions relating to admission to the home. It will suffice to say that subject to certain other conditions or qualifications not necessary to note here any honorably discharged soldiers, sailors or marines were eligible to admission "who served in the army or navy of the United States during the War of the Rebellion, War with Spain, Philippine Insurrection, Boxer Uprising or World War, and who were honorably

discharged, who may be disabled by disease, wounds, old age, or otherwise disabled, and who have no adequate means of support, and who, by reason of such disability are incapacitated from earning their living, and who would otherwise be dependent upon public or private charity, together with such members of their families as are dependent upon them for support, shall be entitled to admission to such institution, subject to the rules and regulations that may be established by the board of managers for the management and government thereof, and upon the approval of their application by the said board of managers." (G. S. 1935, 76-1908. This section was amended by Laws of 1945, chapter 344, to make veterans of World War II also eligible to admission.)

As to discharge of members, G. S. 1935, 76-1908, provided: *"Provided further,* That the board of managers shall have authority by resolution to discharge any inmate from said home on a showing that said inmate has gained admittance into home by misrepresentation of his or her financial or physical condition, or a showing that the financial or physical condition of such inmate has been so altered since his or her admittance as not to justify the further maintenance of said inmate in said home. No such inmate shall be discharged without notice and opportunity to be heard by said board." This provision was unchanged by the 1945 enactment except to change the word "inmate" to the word "member."

The board has full control of "said institution, the property, effects and management thereof" (both under G. S. 1935, 76-1904, as it then existed and as amended in other particulars in 1943 Supp. and by Laws 1945, ch. 344, sec. 1) and is clothed with broad powers to make rules and regulations with reference to the management and government of the home, discipline, etc. (G. S. 1935, 76-1908 as amended by Laws 1945, ch. 344). In the recent case of *Johnson v. Hensley,* 150 Kan. 96, 90 P. 2d 1088, the power of the board to make rules and regulations was fully considered and broadly construed. Syllabus ¶ 1 of the opinion in that case reads:

"The rule making power of the board of managers of the Kansas soldiers' home does not include merely the establishment of reasonable rules and regulations for the management and government of the home, but extends also to the subject of the admission of applicants to the home."

There is no specific provision in the statutes for appeal to the district court from any orders or other determinations by the board. Right of appeal, if any exists, must be found in the gen-

eral provision of the code of civil procedure (G. S. 1935, 60-3301) with reference to the appellate jurisdiction of district courts. That provision reads:

"A judgment rendered or final order made by a probate court, a justice of the peace *or any other tribunal, board or officer exercising judicial functions,* and inferior in jurisdiction to the district court, may be reversed, vacated or modified by the district court." (Italics supplied.)

The question then is whether in taking the actions complained of the board was exercising judicial functions imposed upon it by law.

First, it must be remembered that membership in the home is a privilege extended by the state to certain persons, and upon certain conditions. The right of admission and of continuing membership is wholly statutory. Every applicant for membership necessarily submits himself to the conditions imposed by the statute and in his written application agrees that he will "abide by the rules and regulations . . . . which shall have been or may hereafter be established by the lawfully constituted authorities." This, of course, does not mean that a member has no recourse against invalid rules and regulations, or unlawful acts of the board.

In the light of our many decisions involving other statutory boards we have no hesitancy in saying that the instant board is an administrative and not a judicial body, and that in the absence of specific statutory provision therefor its acts are not subject to appellate review. Brief review of some of our decisions will indicate the uniformity of our holding on this question.

In *Meffert v. Medical Board,* 66 Kan. 710, 72 Pac. 247, which has been repeatedly cited with approval, this court gave consideration to the question of whether the functions of the state board of medical registration and examination are administrative or judicial. It is clothed with broad powers in prescribing qualifications for practicing medicine in this state and in granting and revoking licenses. It was held that the board is not a judicial tribunal. It was there said:

"While it may be said to act *quasi-*judicially, it is only a ministerial board and performs no judicial functions. It is classed with such boards as the county boards of equalization, boards for the examination of applicants for teachers' certificates, city councils in granting and refusing a business or occupation license, and numerous other boards of similar character. Such boards perform no judicial functions, are not judicial tribunals, and have never been classed as such." (Citing many cases, p. 715.) (See, also, as to

the character of the medical board, *Brinkley v. Hassig*, 130 Kan. 874, 879, 289 Pac. 64.)

Among other cases in which the Meffert case has been cited is *Allen v. Burrow*, 69 Kan. 812, 77 Pac. 555, which involved the tribunal created under the Australian ballot law for the settlement of disputes regarding nominations for public office. It was there said that the rule is well settled that in the absence of proof of bad faith or of arbitrary and capricious action "courts will not interfere with public officers in the discharge of any duty involving the exercise of judgment or discretion," and it was suggested that in cases of bad faith or of arbitrary and capricious conduct the remedy is in mandamus or injunction; and that "It has often been said of special tribunals established by statute to pass on matters expressly committed to them that their jurisdiction is exclusive and their determinations final" where their actions are characterized by good faith and are "free from fraud, corruption, and oppression."

In *State, ex rel., v. Mohler*, 98 Kan. 465, 158 Pac. 408, the constitutionality of the act requiring certain commission merchants to secure a license issued by the secretary of the state board of agriculture was considered, and it was held:

"The powers of granting and withholding or revoking licenses to commission merchants, or supervising their dealings with their consignors, or examining their solvency, and of exacting from them bonds to insure their faithful accounting and payment for goods consigned to, them are administrative and not judicial." (Syl. ¶ 3.)

In the case of *In re Chicago, R. I. & P. Rly. Co.*, 140 Kan. 465, 37 P. 2d 12, the railway company sought by "appeal" to the district court to secure a review of certain findings of the state tax commission as to alleged excessive and protested taxes. The judgment of the trial court dismissing the "appeal" for want of jurisdiction was affirmed. In the opinion it was said:

"Apart from the general appellate jurisdiction of the district court over all inferior tribunals exercising judicial powers conferred by the civil code . . . . that court has no inherent appellate jurisdiction over the official acts of public boards or public officers. Where the latter do not transcend their statutory powers nor act fraudulently or oppressively their official acts cannot be challenged in court except where the legislature has made some special provision for a judicial review. (*State, ex rel, v. Mohler*, 98 Kan. 465, 158 Pac. 408, syl. ¶ 9.) . . . . Of course the courts are always open to hear meritorious complaints against illegal or oppressive acts or delicts of nonjudicial public boards and officials, either at the instance of the state or of a private citizen especially aggrieved thereby. But not by appeal—where

no statute confers a right of appeal. In the absence of a statutory right of appeal, judicial redress for illegal, fraudulent or oppressive official conduct must be invoked through some extraordinary legal remedy recognized in our practice—injunction, mandamus or quo warranto. (*State, ex rel., v. Mohler, supra,* 471, 472.)" (pp. 467, 468.)

This question was again considered in *Union Pac. Rld. Co. v. State Tax Comm.,* 145 Kan. 715, 68 P. 2d 1, in the light of a special statute relating to appeals. Our income tax law at that time provided—as it does now—for appeals to the district court from certain findings by the state tax commission (G. S. 1935, 79-3227). In 1943 this appeal statute was broadened to include findings or orders under certain other tax laws. See G. S. 1943 Supp., 74-2426. The provision for appeal provided—as it does now—that "such an appeal shall be heard as an equity proceeding, and shall proceed as an original action." The right and the scope of appellate review under such a statute was considered and the principles heretofore stated again emphasized. In the opinion it was said:

"It clearly appears that an administrative duty is cast upon the commission, and that it is a duty to be performed by it and not by the court. As was said in *Kansas Gas & Electric Co. v. Public Service Comm.,* 122 Kan. 462, 251 Pac. 1097: 'Time and again this court, in consonance with the prevailing attitude of courts throughout the country, has declared that it will not substitute its judgment for that of some administrative tribunal created by legislative authority for dealing with matters of nonjudicial character.' (p. 468.) (See, also, *Bank v. Geary County,* 102 Kan. 334, 170 Pac. 33; *Wichita Gas Co. v. Public Service Comm.,* 132 Kan. 459, 295 Pac. 668; *Southern Kansas Stage Lines Co. v. Public Service Comm.,* 135 Kan. 657, 11 P. 2d 985; *Murphy v. Hobbs,* 139 Kan. 799 33 P. 2d 135, and the discussion herein with respect to the right of appeal.) The function of the trial court was to see that the action of the commission was not fraudulent, unreasonable, arbitrary, oppressive or discriminatory, and not to substitute its judgment for that of the commission." (p. 726.)

We find nothing in the statutes relating to the management of the Kansas soldiers' home which would make inapplicable the principles stated in the Kansas cases cited and in others which might be cited, all of which are in line with the authorities generally. (2 Am. Jur. 858, § 19; 4 C. J. S. 130, § 47.) The board is clearly administrative and not judicial in character.

This question of right of appellate review is not discussed in the brief of the appellees but appellants state that in attempting to take an appeal to the district court the appellees apparently sought to follow the recent case of *Bohl v. Teall,* 157 Kan. 239, 139 P. 2d 418. Clearly that case, which involved an order of the state board

of dental examiners revoking a dentist's license to practice his profession, does not support their contention. The statute there involved specifically provided for appeal to the district court. (G. S. 1941 Supp., 65-1418. Changes since made in the statute need not be noted.) The aggrieved dentist took an appeal under the statute and then secured in the district court a temporary injunction restraining the dental board from enforcing its order pending determination of the appeal. This court set aside the temporary injunction on the ground that an adequate remedy at law had been provided and that "the plaintiff's grievance, if established as alleged, can only be redressed as the statute provides—by appeal." There being no appeal statute in the instant case the reason there given for denying relief through equitable action does not, of course, apply.

It follows from what has been said that the district court was without jurisdiction to entertain an appeal from the action of the board. This conclusion makes it unnecessary to consider other questions presented.

In each of the appeals here consolidated the judgment of the district court is set aside and the cause remanded with directions to dismiss the attempted appeal from the orders of the board.