No. 37,118

ASSOCIATED RAILWAY EQUIPMENT OWNERS, et al., *Appellants*, v. WALTER E. WILSON, State Treasurer (RICHARD T. FADELY substituted), STATE COMMISSION OF REVENUE AND TAXATION, et al., *Appellees*.

(208 P. 2d 604)

Opinion filed July 9, 1949.

*Leon S. Hirsh,* of St. Louis, Mo., argued the cause, and *Lester M. Goodell, Margaret McGurnaghan, Frederick A. Mann, George M. Brewster* and *Randal C. Harvey,* all of Topeka, were with him on the briefs for the appellants.

*James D. Dye,* of Wichita, and *Mason Mahin,* of Smith Center, argued the cause, and *Paul Edgar,* of Topeka, was with them on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action to enjoin the collection of taxes on railroad cars, mostly freight and a few refrigerator cars, leased or rented by the owner to railroad companies and to obtain an interpretation of pertinent tax statutes pursuant to the provisions of our declaratory judgment act. Defendants, the state commission of revenue and taxation, to be referred to as the commission, and the state treasurer, were parties defendant.

Before proceeding with a consideration of the instant action in the district court it is necessary, in view of certain contentions of the parties, to first consider two separate proceedings before the

commission. The instant action involves taxes for the years 1943 and 1944. The first proceeding before the commission pertained to the 1943 taxes. That complaint was filed on or before June 1, 1944, by the Associated Railroad Equipment Owners, an unincorporated organization. It appears that complainant endeavored to represent twenty-seven members of an association which had leased or rented their cars to various railroads. Complainant is not a car or car line company as that term is defined in G. S. 1947 Supp. 79-906. It is a voluntary association of companies which leases cars and it operates in the nature of a car pool.

Under the provisions of G. S. 1947 Supp. 79-907 every organization, as defined in G. S. 1947 Supp. 79-906, is required to pay annually for each current year a sum in the nature of a tax of two and one-half percent upon the total gross earnings received from all sources by reason of the use or operation of their cars within this state. The tax is in lieu of all other state taxes upon the property of such organization. Pursuant to the provisions of G. S. 1947 Supp. 79-908 the railroads which used the cars of the appellants withheld from rentals to be paid to them for the year 1943 the sum of two and one-half percent of such rentals. On March 1, 1944, the railroads made and filed with the commission, as required by law, a statement showing the amount of car rentals for the year 1943 and paid that amount to the commission. Pursuant to the provisions of G. S. 1947 Supp. 79-917 such 1943 taxes were paid to the state treasurer and by him credited to the fund known as the "car company tax fund."

The complaint was the taxes were excessive and did not represent the true and lawful tax owed by the twenty-seven respective members of the complaining association. The tax withheld from each of such members varied as to amount and aggregated $11,611.71. The complaint set forth the amount of the tax withheld from each of such members and alleged it was excessive by fifty percent and in the aggregate amount of $5,805.85.

The complaint on the 1943 tax was heard July 26, 1944. At the hearing a total refund for the various companies was sought in the sum of $7,713.52. On September 6, 1944, the commission, after a hearing, ruled the tax was not greater than the general ad valorem tax would be if the property were taxed on that basis, and denied each claim for refund. A copy of its order was certified to the state treasurer whose duty, after the decision of the commission, it

was to transfer such taxes for the year 1943 from the car company fund to the general revenue fund of the state of Kansas. (G. S. 1947 Supp. 79-917.)

Following the foregoing procedure the next step with reference to the 1943 taxes was an action filed in the district court of Shawnee county by the same complainant, Associated Railway Equipment Owners, to enjoin the collection of the tax. The first count of that petition alleged the car company tax statute was unconstitutional; that the state treasurer, unless restrained, would transfer the 1943 tax to the general revenue fund and place it beyond the control of plaintiffs and the court. To prevent that result a restraining order was sought to be effective until final hearing. The second count alleged the action of the commission with respect to the 1943 taxes was arbitrary and capricious. The prayer was for an injunction against all defendants pending the proceedings.

On October 6, 1944, the day the action was filed in the district court, that court issued an order restraining the commission from carrying out its order dated September 6, 1944, and enjoined Walter E. Wilson, the state treasurer, from transferring the 1943 taxes to the general fund of the state. The order made the restraint effective until further order of the court. The pleadings and evidence disclosed that such state treasurer had transferred the funds on the preceding day, October 5, 1944, to the general fund.

On November 6, 1944, defendants leveled a demurrer against the original petition filed in the district court. The demurrer, among other grounds, alleged plaintiffs had no legal capacity to sue and that several causes of action were improperly joined. The ruling on the demurrer was taken under advisement. And the proceedings remained in that condition without a ruling on the demurrer throughout the year 1944 and a portion of 1945. The disposition of that demurrer will be stated presently.

We come now to the proceedings involving the taxes for the year 1944. On March 1, 1945, the railways made and filed their annual returns with the commission for the year 1944. They paid two and one-half percent of the gross rentals to the commission. Those funds were thereafter transferred to the state treasurer and were by him credited to the car company tax fund.

On or before June 1, 1945, the same complainant, Associated Railway Equipment Owners, filed a complaint with the commission on behalf of twenty-seven member car companies. With that peti-

tion the complainant deposited a single fee of $25 to cover the hearings on behalf of all the twenty-seven members. The complaint alleged the total amount so collected for the year 1944 was $12,-153.77; that in each instance it was excessive by fifty percent and requested a refund of the alleged excessive tax. The commission advised counsel for complainants that in its opinion G. S. 1947 Supp. 79-911 and 79-911a required that complaints with respect to such taxes be filed by the separate parties in interest and that each complaining company was required to pay the statutory deposit for costs of the hearing in the sum of $25. In the letter the commission offered to permit amended complaints of each company to be filed as of the date of the original complaint on the 1944 taxes. The letter was ignored. The commission having received no reply to the first letter again notified counsel for complainants on June 28, 1945, that if the individual complaints were not filed by July 5, 1945, the application then pending would be dismissed. No individual complaints or deposits were filed and on July 26, 1945, the complaint with respect to the 1944 taxes was dismissed. A copy of the order of dismissal was certified to the state treasurer and he transferred the 1944 taxes from the car company tax fund to the general revenue fund of the state.

For a clearer understanding of the chronological order of the evidence it should be emphasized that when the proceeding before the commission involving the 1944 taxes was dismissed on July 26, 1945, and the 1944 taxes were transferred to the state treasurer, the original action in the district court involved only the 1943 taxes. That action was pending on defendants' demurrer to the original petition in the district court.

We shall now return to a consideration of that action filed in the district court October 6, 1944. On June 29, 1945, the parties stipulated that whereas one of the grounds of defendants' demurrer was that the Associated Railway Equipment Owners had no legal capacity to bring the action and, since the respective companies for whom the action was intended to be brought were all willing to join as parties plaintiff in order to eliminate the question of legal capacity to sue, the demurrer would be withdrawn and the plaintiffs given thirty days in which to file an amended petition; the withdrawal of the demurrer was without prejudice to defendants' rights to demur to the amended petition and to raise any question of law or fact in any manner it saw fit to do so; defend-

ants waived no right or defense by reason of the stipulation; the amended petition should contain no claims under $50 in amount and the restraining order issued at the time the original action was filed should remain in force until further order of the court.

It should be borne in mind the action at that time pertained solely to the 1943 taxes. Thereafter and on August 7, 1945, an amended petition was filed in which eighteen separate taxpayers, car companies, joined as plaintiffs. They also amended the petition to include the taxes for the year 1944. In the first count of the amended petition it was alleged the car company statute was unconstitutional and void. The prayer was that the original restraining order issued with respect to the 1943 taxes be extended to cover *both years* and that upon a hearing all taxes be repaid to plaintiffs. No restraining order was issued at any time with respect to the 1944 taxes. The second count of the amended petition was in the alternative and to the effect that if the statute was held to be valid then the court declare the action of the commission with respect to the 1943 and 1944 taxes to be arbitrary and capricious; that the court declare all action to collect the taxes was void until a fair hearing had been had to determine the proper amount of said tax for each of said companies.

Defendants demurred to the amended petition on the grounds (1) the court was without jurisdiction of the person of any of the defendants or of the subject of the action; (2) several causes of action were improperly joined; and (3) the amended petition failed to state a cause of action. The demurrer was overruled. The commission answered placing at issue the allegations of the amended petition. The state treasurer answered at the same time, June 29, 1946, alleging that all taxes for the year 1943 had been transferred to the general revenue fund of the state on October 5, 1944, which was one day prior to the institution of the original action in the district court, and no restraining order of any kind or character had ever been served upon him with respect to the 1944 taxes.

On August 22, 1947, Richard T. Fadely, state treasurer, filed a motion to dissolve the restraining order issued October 6, 1944, the date the action was originally filed in the district court. In support thereof he attached the affidavit of the assistant state treasurer showing the transfer of the 1943 taxes to the general fund on October 5, 1944, and an affidavit of the state auditor to the same effect. The motion to dissolve was heard and overruled on August 25, 1947.

The record discloses no evidence was introduced to refute the contents of the foregoing affidavits or that there were any funds in the hands of the state treasurer upon which a judgment or order of the court could operate. On behalf of the complainants, the petitioners, it was conceded in the opening statement the state treasurer had transferred the funds the day before the restraining order was served.

At the conclusion of the hearing on its merits on August 25, 1947, defendants demurred to plaintiffs' evidence on the grounds:

". . . that it fails to prove a cause of action in injunction and declaratory judgment against the persons of these defendants or either of them, and for the further reason that the evidence fails to disclose that the Court has jurisdiction to render a judgment in injunction or injunctive relief or under the declaratory judgment statute against the persons of the defendants, or either of them."

The demurrer was sustained.

The purpose of this action was to enjoin the assessment and collection of the taxes in question on the grounds the taxing act, G. S. 1947 Supp. 79-906 et seq., contravenes provisions of the state and federal constitutions and in the alternative, if the act be held valid, for an order directing the commission to conduct a fair hearing for the reason that its previous hearing held for the purpose of determining the value of the property was arbitrary and capricious.

Appellants further alleged the assessed value of each of their cars was excessive by fifty percent and if the act be held valid they are entitled to a recovery of that amount.

In sustaining the demurrer to appellants' evidence and dismissing the appeal the district court upheld the order of the commission. In a memorandum opinion the court, in substance, held: The taxing statute was constitutional; the various appellant organizations might bring a joint action for the single purpose of obtaining an adjudication concerning the constitutional validity of the act but that since the court had ruled the act was constitutional appellants could not thereafter join in an action to collect their separate alleged excessive taxes; the money collected for the 1943 taxes had been delivered to the state treasurer by the commission after it had denied that complaint and the state treasurer in turn had transferred that money from the car company tax fund to the general revenue fund, as required by law; no deposit of $25 as required by the act had been made with the commission by each of the appellants to cover costs of their separate hearings with respect to the 1944 taxes; under

the estoppel provision of the law, G. S. 1947 Supp. 79-918, appellants could not be heard concerning the taxes for the year 1944; the taxes collected for that year likewise had been transferred by the state treasurer to the general revenue fund of the state, as required by law.

Although the demurrer to appellants' amended petition contained the ground the causes of action were improperly joined, appellees' demurrer to appellants' *evidence* did not include that ground. We, therefore, prefer not to rule on that point. Nor need we presently determine whether appellants instituted the injunction suit in time to legally enjoin the transfer of the taxes for either year to the general revenue fund of the state. Those questions are secondary and can become germane only in the event it be held the tax statute is invalid or, if valid, that the commission acted arbitrarily and capriciously in determining the value of the property taxed.

We shall, therefore, turn first to the question of the constitutional validity of the act. It may be well to emphasize at the outset this is not an act under which all railroad property is taxed in this state. That property is taxed under separate statutes and in a different manner. This tax is one involving foreign car line companies which rent or lease equipment, in this case tank and refrigerator cars, to railroads which operate in or through this state. (G. S. 1947 Supp. 79-906.)

In view of the various attacks on the statutes involved it seems best to set forth pertinent provisions thereof at the outset although some of them are rather long.

G. S. 1947 Supp. 79-907 provides:

"Every organization as hereinbefore defined, shall pay annually for each calendar year a sum in the nature of a tax at two and one half percentum *upon the total gross earnings* received from all sources *by reason of the use or operation of such cars by such organization within this state, which shall be in lieu of all other taxes upon such property of any organiztion so paying the same: Provided,* For the purpose of taxation all cars used exclusively within the state or used partially within and partially without the state, are hereby declared to have situs within the state, *the value of such property for the purpose of such taxation to be determined as provided for in this act.* The term 'gross earnings received from all sources by such organization from the use or operation of such cars within this state,' is hereby declared and shall ·be construed to mean, all earnings on business beginning and ending within this state and a proportion based upon the proportion of mileage within the state, to the entire mileage over which such business is done of all earnings on interstate business passing through, into, or out of the state." (Our emphasis.)

The pertinent portion of G. S. 1947 Supp. 79-908 requires railroads using or leasing such equipment from lessors to withhold from payment to the lessors two and one-half percent of such gross earnings during the preceding twelve months ending December 31 and to remit that amount to the commission together with a statement thereof on or before March 1 of each year.

Under the provisions of G. S. 1947 Supp. 79-911 an organization such as appellants or a railroad company affected by the act on or before June 1 in any year after the payment of the tax by the railroad company, may appear before the commission to have a hearing on and a review of any matter concerning the correctness or validity of any tax or penalty paid or required by the commission.

G. S. 1947 Supp. 79-911a reads:

"It is hereby declared to be the intention of the legislature that the tax herein imposed *be not greater than the amount of tax such organizations would pay if their cars were taxed on an ad valorem basis, including any value inuring to such cars by reason of being a part of a going concern.* No tax other than as in this act imposed shall be assessed against the property of any such organization except in cases where any such organization shall make complaint in writing to the commission on or before June 1 of the year in which the tax herein imposed is assessed, claiming that it is taxed at too great a rate hereunder. The organization filing such complaint shall at the time complaint is filed deposit with the commission the sum of *$25 to cover the estimated cost of the hearing, which deposit shall be refunded by the commission if it shall be determined at such hearing that the taxes assessed against the complainant should be lowered.* Upon the filing of such complaint and the making of such cost deposit, the commission shall set the complaint for hearing and shall give written notice of such hearing to the complainant at least thirty days before the date set for such hearing." (Our emphasis.)

The same section further provides:

Upon the hearing of any such complaint *the commission shall take testimony to determine whether the taxes herein imposed are greater than the general ad valorem tax for all purposes would be on the cars of such organization subject to taxation in Kansas, if taxed on an ad valorem basis.* In such cases the commission shall have the power, and it shall be its duty, to lower or raise the rates herein imposed to conform to the facts disclosed at said hearing. If the commission modify its finding as to the amount of tax due, it shall refund the excess amount paid by issuing to the claimant its voucher to the state auditor for the refund found to be due. Upon receipt of such voucher properly executed and endorsed, the state auditor shall issue his warrant to the state treasurer for the payment to the claimant out of the car company tax fund created by this act. In order to determine the amount of tax

such organization would pay, said commission *may value all cars of any organization as a unit* and allocate to Kansas that proportion of the total value which the Kansas car mileage bears to the total car mileage of the cars of any such company during the twelve-months period ending December 31, of the preceding year and may then apply to such value, so ascertained, the average ad valorem tax rate applied to property throughout the state for that fiscal year." (Our emphasis.)

The so-called estoppel section, G. S. 1947 Supp. 79-918 is:

"If any railroad company or organization affected by this act shall refuse or neglect to make any report required by this act, or shall refuse or neglect to permit an examination of its books, records, accounts and papers upon demand of the commission, or shall refuse or neglect to appear before the said commisison in obedience to its citation or summons, *or shall fail to object to the tax imposed by this act within the time and in the manner prescribed by this act, it shall be estopped to question or impeach the action or determination of the said commission or the validity of the tax imposed hereunder."* (Our emphasis.)

With respect to the 1944 taxes appellants did not comply with the statutory procedure as requested by the commission. In any event it appears that fact should not, under circumstances previously narrated, preclude appellants from raising the question of the validity of the statutes in connection with the taxes exacted for the year 1943.

Appellants first contend the entire act is invalid for the reason it contravenes the due process clause of the fourteenth amendment to the federal constitution and article 11, section 1, of our state constitution which require a uniform and equal rate of assessment and taxation except as to property not here involved.

It is safe to say the equal protection clause of the federal constitution and state constitutional provisions pertaining to equality and uniformity of taxation are substantially similar and that, in general, what violates one will contravene the other and vice versa. (51 Am. Jur., Taxation, § 169.) At any rate no distinction is apparent with respect to any matter raised here and the two complaints will be considered together.

Appellants argue the instant act imposes a tax based solely on *ownership* of property and (1) operates to discriminate between owners of the same kind of property and between owners in the same attempted classification; and (2) prevents uniformity of operation and results in extra-territorial taxation.

The contentions require analysis of the act. We think it is inaccurate to say the act constitutes a tax on *ownership* as such. The

tax is not imposed on an organization which merely owns railroad equipment, such as the tank and refrigerator cars here involved, but the tax is exacted generally on all organizations within the classification by reason of the *use or operation* of such equipment within this state. (G. S. 1947 Supp. 79-907.) In reality it is not a tax on the gross receipts accruing from the use and operation of the machinery. It is a tax on the property itself. The tax on the property is merely measured by a percentage of the gross earnings received from the use and operation of the property within the state. It is actually a lieu tax placed on the property in the absence of the physical property for assessment purposes. In order, however, that the tax should be equal and uniform the legislature stated it to be its intention ". . . that the tax herein imposed be not greater than the amount of tax such organization would pay if their cars were taxed on an ad valorem basis, including any value inuring to such cars by reason of being a part of a going concern." (G. S. 1947 Supp. 79-911a.)

This rolling stock does not come to rest within any particular county in the state in order that it may be assessed for taxing purposes. It passes through various counties of the state in which the railroad using the equipment operates. Absent some method of this nature for taxing such property it could not be taxed at all. The need of similar legislation has been recognized, enacted and upheld in other states with substantially the same constitutional provisions where it was subjected to the same contentions as those advanced by appellants here. Each of the contentions, previously stated, has been laid at rest in one or more of the following decisions: *Cudahy Packing Co. v. Minnesota,* 246 U. S. 450, 62 L. Ed. 827, 38 S. Ct. 373; *Almer Ry. Equipment Co. v. Commissioner of Taxation,* 213 Minn. 62, 5 N. W. 2d 637; *People v. Keith Railway Equipment Co.,* 70 C. A. 2d 339, 161 P. 2d 244; *Pacific Express Co. v. Seibert,* 142 U. S. 339, 35 L. Ed. 1035, 1039, 12 S. Ct. 250; *Western Union Telegraph Co. v. Indiana,* 165 U. S. 304, 41 L. Ed. 725, 727, 17 S. Ct. 345; *United States Exp. Co. v. Minnesota,* 223 U. S. 335, 56 L. Ed. 459; 32 S. Ct. 211; *Pullman Co. v. Richardson,* 185 Cal. 484, 197 Pac. 346 (261 U. S. 330, 67 L. Ed. 682, 43 S. Ct. 366) ; *Pacific Fruit Express Co. v. Oklahoma Tax Com'n,* 27 F. Supp. 279.

All property within the classification of the statute is taxed equally and uniformly under the statute. This meets all constitutional requirements if the classification is a reasonable one for tax purposes. (*People v. Keith Railway Equipment Co.,* supra.)

The presumption is in favor of the validity of a legislative classification. It is well settled that unless courts can say the legislature could have had no reasonable basis for the classification made it must be sustained. (*Heisler v. Thomas Colliery Co.*, 260 U. S. 245, 67, L. Ed. 237, 43 S. Ct. 83; *Welch v. Henry*, 305 U. S. 134, 83 L. Ed. 87, 59 S. Ct. 121.) We agree with the California court that cannot be said concerning the instant classification. (*People v. Keith Railway Equipment Co.*, supra, p. 358.)

The fact railroad property generally is not assessed at the same rate does not render the instant act invalid. The entire property of railroads is assessed in one manner while other property may be assessed in another manner and be valid. (*Comm'rs of Ottawa Co. v. Nelson*, 19 Kan. 234, 237; *People v. Keith Railway Equipment Co.*, supra.) There is a second difference between companies defined by the instant act and railroad companies that own their own means of transportation. The vital distinction is that railroad companies pay taxes on their roadbeds, rolling stock and other tangible property as well as generally upon their franchise. (*Pacific Express Co. v. Seibert*, supra.)

Appellants' fundamental contention the tax is one based solely on ownership of property and is discriminatory cannot be sustained. The numerous cases cited in support of their fundamental theory are not applicable.

Appellants charge the act contravenes article 2, section 17, of our state constitution which provides:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state."

As already stated the act applies generally to all organizations like appellants. Its operation as to them is uniform. Its operation is as general throughout the state as the subject matter provided for in the act permits. That, we think, is sufficient. (*Rambo v. Larrabee*, 67 Kan. 634, 73 Pac. 915.) It seems to us the peculiar use and the special method employed by appellants in the operation of their business constitutes a sufficient basis for the law.

Appellants contend the provision requiring railroads to withhold two and one-half percent of the gross earnings from their cars and to deposit such amount with the commission constitutes an invasion of powers granted to the interstate commerce commission by

Title 49, § 1 (14), U. S. C. A. It has been held a similar act which is a property tax, as we have held the instant one is, rather than a tax on gross earnings, does not constitute an unconstitutional restraint or burden on interstate commerce. (*Cudahy Packing Co. v. Minnesota,* supra.)

It is next claimed the requirement that railroads withhold the tax from the gross earnings of appellants is invalid. The contention is it establishes a lien in the absence of an existing liability. That the state may establish the tax liability for the use and operation of the cars within this state cannot be doubted. The method devised for collecting the tax from the nonresident appellants does not violate the due process clause of the federal constitution. (*Magnolia Petroleum Co. v. Oklahoma Tax Com.,* 188 Okla. 85, 106 P. 2d 829.) To the same effect involving a similar question is *Travis v. Yale & Towne Mfg. Co.,* 252 U. S. 60, 64 L. Ed. 460, 40 S. Ct. 228.

Appellants allege the requirement in G. S. 1947 Supp. 79-911a that appellants on filing a complaint with the commission deposit $25 to cover the estimated costs of the hearing, which shall be refunded if it be determined the taxes assessed should be lowered, offends against article 2, sections 1, 5, and 17 of the state constitution and the fourteenth amendment of the federal constitution. All of those provisions except section 1 and section 5, article 2, have been set forth previously. Section 5 has no application to the question before us.

We doubt appellants can complain of the provision in question. The complaint pertains solely to the 1944 taxes, as indicated earlier in this opinion. Appellants lodged no complaint before the commission touching the taxes for that year. The Associated Railway Equipment Owners, which filed the complaint, is not an "organization" within the terms of G. S. 1947 Supp. 79-906 that can be heard in this matter. It leased no equipment to railroads. None of its funds was in controversy. It was not an interested party and had no standing before the commission in any capacity. Appellants refused to make the deposit for costs and no hearing was had with respect to the 1944 taxes.

Assuming, without deciding, the constitutional question urged can be raised by appellants it appears the legislature believed the expenses of the commission in connection with hearings of this character probably involving numerous records and accounts of nonresidents might become substantial. Indeed the expenses might far exceed the meager sum of $25. The law also provides if the taxes be

lowered as a result of the hearing the deposit for costs shall be refunded. If the constitutional question raised is before us we think the legislature had the power to make such a provision pertaining to costs for the hearings here involved.

Appellants next argue the district court erred in refusing to find the commission was guilty of arbitrary and capricious action. The first alleged basis for the contention is the commission failed to find the tax was greater than it would have been had it been assessed on an ad valorem basis. Assuming for the moment, without deciding, there was an over-valuation of some of the cars, that fact in and of itself would not be sufficient to justify an injunction against the collection of the taxes, especially where it would operate to invalidate the entire tax levy, in the absence of evidence evincing fraud or an intention to discriminate against appellants. (*Symns v. Graves*, 65 Kan. 628, 70 Pac. 591; *Finney County v. Bullard*, 77 Kan. 349, 94 Pac. 129; *Great Northern Ry. Co. v. Weeks*, 297 U. S. 135, 80 L. Ed. 532, 56 S. Ct. 426, and see anno. p. 546 [L. Ed.], including Kansas cases.) An assessment is not deemed to be fraudulent merely because it is excessive. (*Finney County v. Bullard*, supra.)

The only function of the district court was to determine whether appellants' evidence showed the action of the commission was fraudulent, unreasonable, arbitrary, oppressive or discriminatory. Its function was not to substitute its judgment for that of the commission relative to the proper valuation of the property. (*Anderson v. Hedges*, 160 Kan. 665, 165 P. 2d 425; *Union Pac. Rld. Co. v. State Corporation Commission*, 165 Kan. 368, 194 P. 2d 939.)

Leon S. Hirsh, a witness and attorney for the Associated Railway Equipment Owners, which originally attempted to bring this action on behalf of all appellants, introduced in evidence before the commission a chart, exhibit "A," which he had prepared. The chart embraced various factors which he contended were essential to arriving at the fair valuation of the cars. The intended purpose of the chart was to show there was no relationship between the tax on gross earnings and the amount of tax as determined on an ad valorem basis. Nevertheless with respect to his own chart he admitted:

"Whenever you start valuing property two valuation engineers are always reaching different conclusions. I am presenting this as my method of valuation; your engineer might change it to a considerable degree."

In the light of this admission was the commission guilty of fraud or arbitrary conduct if it did not accept his valuation as conclusive or convincing?

Let us examine another point under our statute, G. S. 1947 Supp. 79-911a. It provides the tax shall not exceed what it would be on an ad valorem basis" . . . including any value inuring to such cars by reason of being a part of a going concern." That the going concern value is a proper factor under a statute providing therefor seems to be well established. (*Pullman Co. v. Richardson*, 261 U. S. 330, 67 L. Ed. 682, 43 S. Ct. 366; *Almer Ry. Equipment Co. v. Commissioner of Taxation*, 213 Minn. 62, 67, 5 N. W. 2d 637.) The same witness testified the figures in his chart included "going concern" value. The chart, however, does not contain that item as one of the factors upon which he determined the valuation.

Let us consider another item. The same witness made a deduction in valuation on the basis the cars were idle part of the time. It appears the commission did not agree appellants had a right to make that deduction. We are advised of no authority to make it. If such authority exists there is no indication the commission arbitrarily refused to consider it.

Let us consider another point. The record discloses the commission was of the opinion these cars were required to be in good state of repair in order to carry necessarily heavy freight loads. The commission apparently believed the value of the older cars was greater than that indicated by the chart. The cars, of course, were not in evidence for examination. That was not the fault of the commission. The witness was, therefore, asked, "How many miles would a car run before being called in for repairs?" The answer was, "That depends on the age of the car and the mileage it is run." The witness, however, introduced no evidence to show the cars had not been kept in proper repair and that the commission had, therefore, overvalued them. The cars obviously were kept in sufficiently good condition to be used and to produce the income which was used as a measure for determining the amount of the tax.

Another item on the chart of the witness with which the record shows the commission did not agree was a general reduction of the true value of each and every car by fifty percent. We know of no statute or rule under which the commission was compelled to accept such evidence of overvaluation. (See G. S. 1935, 79-301, requiring

personal property to be listed at its true value.) We think it is unnecessary to further pursue other objections the commission may have had to the method of valuation disclosed by appellants' chart or to further treat appellants' contention the district court was obliged to conclude the commission acted fraudulently or arbitrarily in rejecting appellants' evidence on valuation.

Appellants argue the commission introduced no testimony to refute their evidence and that the commission cannot make a valid determination upon facts it has not brought into the record. It is, of course, true that all administrative tribunals should deal fairly with complainants with respect to the basis of their decisions. We can conceive of cases where failure of administrative agencies to disclose material matters on which a decision is to be based may prejudice complainants. In the very nature of the instant case, however, the burden rested squarely upon complainants to show the two and one-half percent tax was excessive. The record indicates every opportunity was fairly given appellants to do so. The record also indicates testimony of appellants with which the commission did not agree.

Under the statute all the cars may be valued as a unit. (G. S. 1947 Supp. 79-911a.) The provision to so value the cars is valid. (*Almer Ry. Equipment Co. v. Commissioner of Taxation,* supra, p. 67; *Cudahy Packing Co. v. Minnesota,* supra.) That the valuation may not result in mathematical exactitude is not a constitutional defect (*People v. Keith Railway Equipment Co.,* supra, p. 342) and does not establish bad faith on the part of the commission. In view of the record we cannot say the district court committed reversible error in refusing to find the commission acted arbitrarily or capriciously.

The judgment is affirmed.

HARVEY, C. J., and ARN, J., not participating.