No. 49,878

THE CITY OF WICHITA, KANSAS, a Municipal Corporation, *Appellee,* v. THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS; G. T. VAN BEBBER, Chairman; WILLIAM G. GRAY and R. C. LOUX, Commissioners, and their Respective Successors in Office, as Members of the State Corporation Commission of the State of Kansas, *Appellant.*

(592 P.2d 880)

Opinion filed March 31, 1979.

*A. Rodman Johnson,* assistant general counsel for the State Corporation Commission, argued the cause, and *Thomas J. Pitner,* general counsel, and *Russell E. Bishop,* assistant general counsel, were with him on the brief for the appellant.

*Richard Jones,* of Hershberger, Patterson, Jones & Roth, of Wichita, argued the cause, and *Jerome E. Jones,* of the same firm, and *John Dekker,* city attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

McFarland, J.: This is an appeal by the State Corporation Commission of the State of Kansas (Commission) from an order of the district court reversing an order of the Commission whereby the Commission had claimed jurisdiction over the issuance of revenue bonds for the operation of a gas utility by the City of Wichita (City). The district court found the statute by which the Commission claimed jurisdiction was unconstitutionally vague.

The City, by Ordinance No. 33-090, established the Wichita Gas Utility for the purpose of furnishing gas service to Wichita commercial, industrial, educational, and governmental customers during periods of curtailment. The ordinance was later amended by No. 33-938 to clarify that the purpose was to provide service "in the event of curtailment or interruption of service by existing private utility companies," and not to compete directly with private companies. A Gas Distribution Contract was entered into between the City and the Gas Service Company.

A notice of intent to issue bonds was enacted and published, and no protests were received. Thereafter, a bond ordinance (No. 34-035) was enacted on September 16, 1975, authorizing the issuance of $3,300,000 in natural gas utility revenue bonds for the costs of the utility improvements. The bonds were approved by the attorney general and registered by the state treasurer as required by law. The bonds were issued and delivered, and payment received by the City.

Thereafter, on its own motion, the Commission issued an order directing the City to appear "to Show Cause, if any there be, why this Commission should not proceed with appropriate action to nullify and set aside said Ordinance No. 34-035 and any revenue bonds issuing or resulting therefrom." It is agreed that the City never applied to the Commission for approval of the revenue bonds, pursuant to K.S.A. 10-1203. The City responded and

moved for an order by the Commission disclaiming jurisdiction and dismissing the show cause order. After a hearing on the motion, the Commission issued its order on July 21, 1976, wherein it denied the motion and determined that it had jurisdiction over the issuance of revenue bonds by the City, pursuant to K.S.A. 10-1203. Although it determined that it had jurisdiction, the Commission also found it would not be in the public interest to invalidate these bonds, stating:

"We are satisfied that, had the issuance of said bonds been submitted to the Commission in a timely manner, substantial evidence relating thereto could have been presented to the Commission sufficient to warrant approval prior to the issuance thereof. We do not feel it would now be in the public interest for the Commission to take action seeking to invalidate these bonds. But, based on the foregoing findings in this Order, the Commission had concluded that any subsequent proposal by the City of Wichita to issue revenue bonds on behalf of the Wichita Gas Utility pursuant to K.S.A. 10-1203 must be submitted to this Commission for its consideration prior to the issuance thereof."

The City filed a motion for rehearing, which was denied. Thereupon, the City applied for judicial review in Sedgwick County District Court. Briefs were filed and both parties presented oral arguments. The district court found for the plaintiff City. The court ruled that the Commission had no jurisdiction because (1) K.S.A. 10-1203 was inapplicable to the City since K.S.A. 1975 Supp. 66-104 expressly exempted municipal utilities from jurisdiction of the Commission, and (2) K.S.A. 10-1203 was unconstitutionally vague. It set aside the order of the Commission. The Commission appeals, asking for reinstatement of its order.

The first matter presented on appeal is the proper scope of review of the Commission's order by the trial court. The scope of review is set forth in K.S.A. 1978 Supp. 66-118d as follows:

"Said proceedings for review shall be for the purpose of having the lawfulness or reasonableness of the original order or decision or the order or decision on rehearing inquired into and determined, and the court hearing said cause shall have the power to vacate or set aside such order or decision on the ground that such order or decision is unlawful or unreasonable. . . .

". . . No court of this state shall have the power to set aside, modify or vacate any order or decision of the commission, except as herein provided."

On appeal, however, the Commission concedes that in this case the district court properly had the power to use full discretion and was not bound by the "lawfulness or reasonableness" test, since

the constitutional and jurisdictional issues involved questions of law. An administrative determination of a jurisdictional issue is not conclusive upon the courts with respect to such determination, and the courts have the power and duty to exercise their own independent judgment. 2 Am. Jur. 2d, Administrative Law § 692, pp. 581-82.

The next issue on appeal is whether K.S.A. 10-1203 is a constitutionally valid enactment of the legislature. K.S.A. 10-1203 provides:

"No municipality, as herein defined, shall issue revenue bonds to acquire, construct, reconstruct, alter, repair, improve, extend or enlarge any plant or facilities for the furnishing of any utility service where same is being furnished by a private utility, except upon approval by the corporation commission of the state of Kansas, after a finding based on substantial evidence that the acquisition, construction, reconstruction, alteration, repair, improvement, extension or enlargement of such plant or facilities is necessary or appropriate for the municipality and its consumers, and for the protection of investors and will not result in the duplication of existing utility services in the area served or to be served by the municipality."

The district court held the statute unconstitutional on two grounds as follows:

"6. The language of K.S.A. 10-1203 is vague and ambiguous and does not convey a sufficient definite warning as to the proscribed conduct as to be understood by persons of ordinary comprehension.

"7. K.S.A. 10-1203 is in conflict with the provisions of K.S.A. 66-104 to the extent that an intelligent application of its terms is impossible and by reason thereof is unconstitutionally vague and, hence, void."

The first ground on which the district court based its determination of the unconstitutionality of K.S.A. 10-1203 is that it is vague and ambiguous. Long-standing and well established rules of the court are that the constitutionality of a statute is presumed, that all doubts must be resolved in favor of its validity, and before the statute may be stricken down it must clearly appear the statute violates the constitution. Moreover, it is the court's duty to uphold the statute under attack, if possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done. *Rogers v. Shanahan,* 221 Kan. 221, 223, 565 P.2d 1384 (1976); *Brown v. Wichita State University,* 219 Kan. 2, Syl. ¶ 3, 547 P.2d 1015 (1976); *Leek v. Theis,* 217 Kan. 784, 792-93, 539 P.2d 304 (1975); see also *State ex rel. Schneider v. Kennedy,* 225 Kan. 13, 20-21, 587 P.2d 844 (1978).

The test for determining whether a statute is vague and ambiguous is whether the language conveys a sufficient definite warning as to the proscribed conduct when measured by common understanding and practice. *Tri-State Hotel Co. v. Londerholm,* 195 Kan. 748, 765, 408 P.2d 877 (1965); accord, *Morra v. State Board of Examiners of Psychologists,* 212 Kan. 103, Syl. ¶ 7, 510 P.2d 614 (1973).

The vagueness question centers around the use of the term "utility service[s]" twice in K.S.A. 10-1203. In *Berndt v. City of Ottawa,* 179 Kan. 749, 751, 298 P.2d 262 (1956), this court said:

"No doubt it is quite true that almost any word in the English language is susceptible of more than one meaning or interpretation. Thus, if a word or phrase used in any given statute is ambiguous, this court must consider the intention of the body of individuals responsible for its passage in order to give the word, phrase or entire statute its true, intended meaning. The manifest intention of the legislature controls rather than the meticulous definition of words used."

The Commission interpreted the term to be generic in nature where it first appears and specific in nature in the latter context. The City argued, and the district court concurred, that because two different meanings could be ascribed to the same term the statute was constitutionally invalid. For reasons set forth later in the opinion this point is without merit.

The second ground on which the district court based its determination of the unconstitutionality of K.S.A. 10-1203 was that it conflicted with K.S.A. 1975 Supp. 66-104, which generally exempts municipally owned public utilities from regulation by the Commission. The relevant portion of K.S.A. 1975 Supp. 66-104 is as follows:

"The term 'public utility' shall also include that portion of every municipally owned or operated electric or gas utility located outside of and more than three (3) miles from the corporate limits of such municipality, but nothing in this act shall apply to a municipally owned or operated utility, or portion thereof, located within the corporate limits of such municipality or located outside of such corporate limits but within three (3) miles thereof.

"Except as herein provided, the power and authority to control and regulate all public utilities and common carriers situated and operated wholly or principally within any city or principally operated for the benefit of such city or its people, shall be vested exclusively in such city, subject only to the right to apply for relief to the corporation commission as hereinafter provided in K.S.A. 66-133."

The only mentioned exception to the exemption from jurisdiction is K.S.A. 66-133, which provides for hearings before the Com-

mission upon complaints with respect to certain contracts between municipalities and public utilities (not relevant here). A 1978 amendment to 66-104 provides another exception through K.S.A. 1978 Supp. 66-131a, which grants jurisdiction to the Commission over municipally owned utilities for a limited purpose dealing with heat loss standards and energy efficiency ratios of appliances.

The City contends the district court properly concluded that K.S.A. 10-1203 conflicted with K.S.A. 1975 Supp. 66-104 and was, accordingly, unconstitutional. The Commission contends it is not relying on Chapter 66 for jurisdiction and that jurisdiction is specifically granted by K.S.A. 10-1203 for the particular situation herein.

K.S.A. 66-101 sets forth a broad grant of power for the Commission, giving "full power, authority and jurisdiction to supervise and control the public utilities." "Public utility" is defined in 66-104, and the City is exempt from this authority and jurisdiction except for the specific instances of 66-133 and 66-131a, cited above. The Commission concedes the 66-104 exemption.

K.S.A. 10-1203 grants authority to the Commission to approve or disapprove the issuance of revenue bonds for specified municipal utility projects. To approve the revenue bonds the Commission must find the project is necessary or appropriate and not duplicative of existing privately owned services of a like nature.

The district court found K.S.A. 10-1203 and K.S.A. 1975 Supp. 66-104 to be in conflict; the Commission contends they are not.

If the statutes are in conflict, the Commission notes the general rule that where there is a conflict between a statute dealing generally with a subject and another statute dealing specifically with a subject, the specific legislation controls. *Everett v. Blue Cross-Blue Shield Ass'n*, 225 Kan. 63, Syl. ¶ 2, 587 P.2d 873 (1978); *Cutrel v. Best*, 169 Kan. 16, Syl. ¶ 1, 217 P.2d 270 (1950). It argues that K.S.A. 10-1203 is a specific statute dealing with revenue bonds and it controls over the broad general regulatory statutes of Chapter 66.

The Commission also notes the language in K.S.A. 1975 Supp. 66-104, which states "nothing *in this act* shall apply to a municipally owned or operated utility." (Emphasis added.) This language is quite significant as "this act" obviously applies to the Public Utilities Act (Chapter 66) and not to the Revenue Bonds

statute in question. Chapter 10, Article 12, is a separate act and contains its own definitions at 10-1201, which are not the same as in 66-104.

The constitutional questions are so closely related to the final issue before us that the issue should be stated before proceeding further. The final issue is whether K.S.A. 10-1203, if constitutional, conferred jurisdiction to the Commission over the City under the circumstances herein. The City argues that its Ordinance No. 33-090, as amended by No. 33-938, prohibits the utility from offering any service which is available from a private utility and therefore such service cannot be duplicative. The City also notes that the private utility involved has voiced no opposition to the issuance of the revenue bonds. The City's construction of the statute, in effect, gives the City the right to determine the duplicative service question. The Commission argues this would totally subvert the purpose of the statute.

After having stated the various interrelated issues and the parties' contentions in respect thereto, we proceed now to determine the controversy.

Article 12 of Chapter 10 relates solely to the issuance of revenue bonds by municipally owned utilities. K.S.A. 10-1201 provides:

" 'Municipality' as used in this act means a municipality as defined in K.S.A. 10-101. 'Utility' as used in this act means any publicly owned utility, instrumentality or facility of a revenue producing character including but not limited to plans [plants], facilities and instrumentalities for the purpose of supplying natural or manufactured gas, water or electric light and off-street parking facilities and sewage disposal plants, facilities and interceptor sewers. 'Revenue bonds' as used in this act means bonds issued by any municipality in this state to be paid exclusively from the revenue derived from the operation of a utility."

K.S.A. 10-1203, repeated herein for simplification, provides:

"*No municipality,* as herein defined, *shall issue revenue bonds* to acquire, construct, reconstruct, alter, repair, improve, extend or enlarge any plant or facilities *for the furnishing of any utility service where same is being furnished by a private utility, except upon approval by the corporation commission of the state of Kansas,* after a finding based on substantial evidence that the acquisition, construction, reconstruction, alteration, repair, improvement, extension or enlargement of such plant or facilities is necessary or appropriate for the municipality and its consumers, and for the protection of investors and will not result in the duplication of existing utility services in the area served or to be served by the municipality." (Emphasis added.)

The purpose of K.S.A. 10-1203 is readily ascertainable on its face.

If a private utility is already providing natural gas in a municipality, and if said municipality is seeking by the sale of *revenue bonds* to raise funds to be used on facilities to provide natural gas to the same municipality, then the Commission is granted jurisdiction to determine (1) if the planned expenditure is necessary or appropriate for the municipality and its consumers and for the protection of its investors, and (2) that the planned expenditure will not result in duplication of the gas service already being provided by the existing private utility.

Such revenue bonds are paid exclusively from revenue from the plant or facilities on which the money so raised was spent. K.S.A. 10-1201. If an unnecessary or inappropriate plant or facility is acquired, constructed, etc., considerable harm could result to the municipality and its consumers, as well as to its investors. If the services to be provided are all, or partly, duplicative of existing services provided by a private utility, obviously, the earning ability of the municipally owned utility could be seriously jeopardized. K.S.A. 10-1203 simply provides that before a municipality can issue revenue bonds for a utility (as defined by K.S.A. 10-1201), in a case where a privately owned utility supplying the same product exists within the municipality, the municipality must secure the approval of the Commission. Municipalities, potential consumers, and investors are thereby afforded a measure of protection from unnecessary, inappropriate, or duplicative municipal utility projects.

Much space in the Commission's order and in the briefs of the parties is devoted to the vagueness issue and to different meanings ascribed to the term "utility services" in two separate places in K.S.A. 10-1203. It appears there has been a confusion of "utility services," as used in Chapter 66 (the general utility regulatory statutes), with the specific usage of the term in Article 12 of Chapter 10, involved herein. In common parlance, "utility service" refers to the furnishing to consumers of natural gas, water, and electricity. In Article 12 the "utility" definition includes these items, as well as off-street parking facilities, sewage disposal plants and interceptor sewers. Under the statute in question, for example, if a municipality desires to acquire, construct, etc., off-street parking facilities and issues revenue bonds for such project, and if a privately owned off-street parking facility (such facility being a "private utility" within the Act)

exists within the municipality, then the jurisdiction of the Commission attaches and the Commission must determine whether the municipally proposed utility service is necessary or appropriate and whether such service would be duplicative of existing private utilities. Without approval of the Commission the revenue bonds could not be issued. The same rationale is true for each of the categories of proposed utility projects set forth in K.S.A. 10-1201. In this light then,. there is no vagueness in the statute. The argument that insufficient notice of the proscribed conduct is given is without merit. The act requires the municipality seeking to issue the revenue bonds to have the prior approval of the Commission. Simply because the City may have been unaware of, or chose not to follow, the statute, does not mean the statute is vague.

K.S.A. 10-1203 does not conflict with K.S.A. 1975 Supp. 66-104. K.S.A. 10-1203 is legislation covering municipalities (as defined by K.S.A. 10-101) seeking to engage in particular activities by issuance of *revenue bonds.* The statute grants jurisdiction to the Commission totally separate and apart from Chapter 66. The purposes and provisions of Chapter 66 and Article 12 of Chapter 10 are separate and distinct and do not conflict with each other. In disposing of the constitutional attacks we hold that K.S.A. 10-1203 is constitutionally valid.

We turn now to the issue of whether the City of Wichita's particular issuance of revenue bonds in question was subject to the provisions of K.S.A. 10-1203. A privately owned existing utility was providing natural gas to areas within the municipality. The municipal project for which revenue bonds were to be issued was to provide natural gas within the municipality. These two statements of fact, alone, are sufficient to bring the City's proposed issuance of revenue bonds under the jurisdiction of the Commission, pursuant to K.S.A. 10-1203. The alleged fact that the project will not be duplicative of existing natural gas private utility services on the basis that the new service will be for customers whose private natural gas service has been curtailed or interrupted, is a matter of evidence to be considered by the Commission in making its findings under the statute as to whether the project was necessary or appropriate and nonduplicative of existing privately owned natural gas utility services. The Commission concluded in its after-the-fact hearing that it would

have approved the issuance of the bonds. This determination rested in large part on the City's presentation of evidence of need and of lack of duplication. But, we repeat, this was a matter of evidence to be presented to the Commission and has no application on whether the statute applied.

The judgment is reversed.

HERD, J., not participating.