No. 56,706

FARMERS CO-OPERATIVE, *et al.*; MERL YAKEL, *et al.*; ROBIN and LAURIE WRIGHT, *et al.*, ROBERT and DORIS WRIGHT, *et al.*, *Appellants*, v. KANSAS BOARD OF TAX APPEALS, *et al.*, *Appellees.*

(694 P.2d 462)

Opinion filed January 26, 1985.

*Robert F. Bennett*, of Bennett, Lytle, Wetzler, Winn & Martin, of Prairie Village, argued the cause, and *Janice S. Clothier*, of the same firm, was with him on the briefs for the appellants.

*Carol B. Bonebrake*, of the Kansas Department of Revenue, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

LOCKETT, J.: This is an appeal from the judgment of the Shawnee County District Court affirming the order of the Kansas Board of Tax Appeals denying the owners of certain farm machinery and equipment a tax exemption which they claim is authorized by K.S.A. 1983 Supp. 79-201i and 79-201j. Kansas Farm Bureau, Inc., intervened in support of the application of the taxpayers for exemption before the Board of Tax Appeals and joined with the taxpayers as a plaintiff in the appeal to the district court and in this appeal.

Merl Yakel, Bob and Doris Wright, and Robin and Laurie Wright (custom cutters) are owners of certain farm machinery and equipment. They are engaged in the business of providing custom combining services to farmers in Kansas and other states. They charge a standard rate for their services, based on acreage,

bushels cut, and the market price that year. While Yakel owns farm land and uses his equipment occasionally on that land, the other taxpayers do not own farmland and use their farm machinery to harvest grain only on land possessed by others.

The Farmers Co-operative (Co-op), owned by individuals in Kearney and Hamilton counties, also sought an exemption for the fertilizer equipment which they own. An individual automatically becomes a member of the Co-op if he or she uses the equipment and/or purchases enough goods from the Co-op. The Co-op rents its fertilizing equipment to farmers based on a per acre charge or the amount of product used. In addition to leasing equipment, the Co-op also handles grain, and sells fuel, fertilizer, feed and chemicals.

The Co-op filed a claim for exemption from ad valorem taxes for its fertilizer equipment. The Board of Tax Appeals (BOTA) denied the application for exemption. Co-op filed a motion for rehearing which BOTA granted. BOTA then allowed the Co-op to intervene in a separate action involving the custom cutters. BOTA conducted the hearing and again denied the exemption request. On appeal, the Shawnee County District Court affirmed BOTA's order. After the parties had perfected their appeal, the matter was transferred to this court.

The issue on appeal relates to the construction of 79-201i and 79-201j. The taxpayers contend that, under the clear wording of these statutes and in harmony with the legislative intent, the farm machinery and equipment involved is entitled to an exemption from the property tax because it was actually, regularly and exclusively used in farming and ranching operations. BOTA contends that use, in and of itself, does not entitle the property to exemption and that the exemption will be withheld unless the personal property is actually and regularly used exclusively in farming or ranching operations by the owner of the machinery and equipment on land where he is the owner, tenant or sharecropper. BOTA determined the legislature intended that the owner of the machinery and equipment "have a significant tie to the land," and that the machinery must be owned by those who actively engage in farming and ranching operations, not those who provide a service to individuals engaged in farming and ranching operations.

K.S.A. 1983 Supp. 79-201i states:

"**Purpose for farm machinery and equipment property tax exemption.** *It is the purpose of K.S.A. 1982 Supp. 79-201j of this act to promote, stimulate and develop the general welfare, economic development and prosperity of the state of Kansas by fostering the growth and development of agricultural endeavors within the state.* Agriculture, as conducted in farming and ranching operations throughout the state, is the primary basis of the Kansas economy. Communities, regions, and the state as a whole are materially dependent upon agricultural endeavors and derive substantial financial benefit from the success of Kansas agriculture. Farming and ranching operations require the investment of large sums of capital for the purpose of providing the land on which the operations are conducted, and the farm machinery and equipment necessary to satisfactorily carry out such endeavors. Because of agriculture's unique requirements of substantial capital investment, the property tax burden becomes a deterrent to such investment and, in some instances, an encouragement to farm and ranch abandonment. Kansas, and all its citizens, will benefit from any improvement in the economic environment of Kansas agriculture. *The exemption from the ad valorem property tax of farm machinery and equipment actually and regularly used in farming and ranching operations will constitute an incentive to agriculture and will improve the general economy of the state.* Considering this state's heavy reliance on agriculture, the enhancement of agricultural endeavors is deemed to be a public purpose which will promote the general welfare of the state and be for the benefit of the people of the state." (Emphasis supplied.)

K.S.A. 79-201j states:

"**Property exempt from taxation; farm machinery and equipment.** The following described property, to the extent specified by this section, shall be exempt from all property or ad valorem taxes levied under the laws of the state of Kansas:

"All farm machinery and equipment. *The term 'farm machinery and equipment' means that personal property actually and regularly used exclusively in farming or ranching operations.* The term 'farm machinery and equipment' shall not include any passenger vehicle, truck, truck tractor, trailer, semitrailer or pole trailer, other than a farm trailer, as the terms are defined by K.S.A. 8-126 and amendments thereto.

"The provisions of this section shall apply to all taxable years commencing after December 31, 1982." (Emphasis supplied.)

The facts in this case are essentially uncontroverted. The taxpayers are the owners of farm machinery and equipment. The taxpayers' farm machinery and equipment is actually and regularly used exclusively in farming and ranching operations. Whether the statute requires that the one requesting the exemption be the owner of the equipment and also be the owner, tenant or sharecropper of the land on which it is used, thereby having a significant tie to the land, is a question of law.

Where the interpretation of a statute is a question of law, it is the function of the court to interpret the statute to give it the

effect intended by the legislature. *State, ex rel., v. Unified School District*, 218 Kan. 47, 542 P.2d 664 (1975). The purpose and intent of the legislature governs when that intent can be ascertained from the statute. *Szoboszlay v. Glessner*, 233 Kan. 475, 664 P.2d 1327 (1983). Words in common usage are to be given their natural and ordinary meaning in arriving at a proper construction of the statute. *Stephens v. Van Arsdale*, 227 Kan. 676, 608 P.2d 972 (1980). When a statute is susceptible of more than one construction, it must be construed to give expression to its intent and purpose, though such construction is not within the strict literal interpretation of the statute. *In re Birdsong*, 216 Kan. 297, 532 P.2d 1301 (1975).

When construing requests for exemptions from ad valorem and property taxation, the following rules of construction apply: Constitutional and statutory provisions exempting property from taxation are to be strictly construed against the one requesting exemption. *In re Board of Johnson County Comm'rs*, 225 Kan. 517, 519, 592 P.2d 875 (1979). All doubts concerning exemption are to be resolved against the exemption in favor of taxation. *Trustees of The United Methodist Church v. Cogswell*, 205 Kan. 847, 851, 473 P.2d 1 (1970). The burden of establishing exemption from taxation is on the one claiming it. *Lutheran Home, Inc., v. Board of County Commissioners*, 211 Kan. 270, 505 P.2d 1118 (1973). Simply stated: Taxation is the rule, exemption is the exception.

BOTA first determined that 79-201i asserted the purpose of the exemption to be the broad principle of promoting economic development and prosperity of the state by fostering growth and development of agricultural endeavors within the state. It concluded that agricultural endeavors not only include preparation of the soil, planting, raising and harvesting, but in addition, they include processing the products for consumption, sale of the products to the consumer, the science of understanding the nature and preparation of the soil, design and production of farm equipment and machinery, sale of machinery and equipment to the user and other related services. BOTA noted that after the statute stated the broad principle of promoting prosperity for agricultural endeavors, the statute then focused on farm and ranching operations in Kansas. The statute acknowledged that farm and ranching operations require large sums of capital to

purchase and use farm and ranch land. Because of agriculture's unique requirement of substantial capital, the burden of paying taxes on farm machinery and equipment deters the investment in land and encourages farm and ranch abandonment. The statute states that the public purpose is to promote the general welfare of the state and to benefit the people of the state by exempting from the ad valorem and property tax farm machinery actually and regularly used in farming and ranching operations.

BOTA reasoned that 79-201j, when enacted, exempted only farm machinery and equipment actually and regularly used exclusively in farming and ranching operations. This section did not refer to the all-encompassing phrase "agricultural endeavors," but avoided that phraseology in stating the statutory exemption. Instead of the broad phrase, the legislature restricted and limited the exemption to only that machinery and equipment which was "actually and regularly used exclusively in farming and ranching operations."

Taxpayers claim that over the years agriculture has changed: because of the high cost of machinery and equipment, it has become necessary for some who farm the land to hire others to till the soil, spray, and harvest the crops; those individuals who provide this service also have enormous investments in farm machinery and equipment; the custom cutters' machinery and equipment are actually, regularly and exclusively used in farming and ranching operations, and therefore, they also are entitled to the exemption. The taxpayers claim that unless they receive the exemption, payment of the tax will be passed on to the farmers or ranchers who possess the fields and contract for the taxpayers' services.

BOTA argues that while the taxpayers use their machinery and equipment in farming and ranching operations, the taxpayers do not possess the land upon which the operations were conducted. The taxpayers use their machinery to provide a service for a fee on land possessed by others. Machinery and equipment used to provide a service is not personal property actually and regularly used exclusively in farming or ranching operations and is, therefore, not entitled to the exemption.

We have discussed the phrase "used exclusively" in many cases. See *Clements v. Ljungdahl*, 161 Kan. 274, 167 P.2d 603 (1946); *State, ex rel., v. Security Benefit Ass'n.* 149 Kan. 384, 394,

87 P.2d 560 (1939); *Trustees of the United Methodist Church v. Cogswell*, 205 Kan. 847. The phrase, "used exclusively" in the Constitution and statutes means that the use made of the property sought to be exempt from taxation must be solely and purely for the purpose stated and without admission to participation in any other use. *Seventh Day Adventist v. Board of County Commissioners*, 211 Kan. 683, 690, 508 P.2d 911 (1973).

Based on the rules of statutory construction and case law as to the property tax exemption, we must agree with BOTA. The legislature used the phrase "farming and ranching operations" in the statutes. That phrase is a more limited term than the comprehensive term "agricultural endeavors." In 79-201i, where the legislature outlined the purpose behind the exemption, it used the phrase "agriculture, as conducted in farming and ranching operations." The whole emphasis of the section is on farming and ranching operations, implying an intent by the legislature to limit the exemptions strictly to those who actually farm or ranch.

BOTA points out two prior cases that control. We agree.

*In Stahl v. Educational Assoc'n*, 54 Kan. 542, 38 Pac. 796 (1895), property owned by a nonprofit corporation, a tax-exempt educational institution, was leased to a tenant. All the rents and profits from the rental property were used by the corporation exclusively for educational purposes. The court denied exempt status to the rented property, reasoning that when property was rented to a tenant, it was subject to taxation the same as any other rented property because it was no longer exclusively used by the tax-exempt educational institution.

In *In re Board of Johnson County Comm'rs*, 225 Kan. 521, 592 P.2d 875 (1979), real and personal property owned by a for-profit corporation was leased to a nonprofit corporation, a hospital. The owner of the property, a corporation organized for profit, sought to exempt the leased property because the property leased was actually and regularly used exclusively by the hospital. The property owner contended if such property was subject to ad valorem and property taxes, it would be a detriment to the tax-exempt entity as it, not the owners, would bear the ultimate burden of paying the taxes. We determined that the renting by the lessor and the physical use of the property by the lessee constituted a simultaneous use of the property. When an owner leases his property to another, he cannot be the one using the

property. When property owned by a non-tax-exempt entity is leased for profit to a qualifying tax-exempt entity, it is not being used exclusively for tax-exempt purposes and is subject to ad valorem or property taxes.

Here the custom cutters and the co-operative are using their equipment and machinery in a service for fee business. The co-operative charged a fee for the use of its equipment. When the co-operative rents its equipment to an individual farmer for use on his fields, there are two simultaneous uses being made of the equipment: (1) by the farmer fertilizing his fields and (2) by the co-operative collecting a rental fee for the use of the machinery.

The custom cutters point out they not only furnish the farm machinery and equipment but also operate the machinery and equipment on the farmer's or rancher's land. They claim if one owns and operates there can be no simultaneous use of the machinery. We disagree. The custom cutters are attempting to create a distinction without a difference. Even though the custom cutters own and operate their machinery, they are providing a service to the farmer or rancher. Had the legislature intended to exempt all farm and ranch machinery and equipment, it could have done so, but did not. The custom cutters are compensated for their services. They charge according to their cost in order to insure a profit. While this cost is eventually paid by the farmer or rancher, this is true for any product purchased or service received by the farmer or rancher.

The 1984 legislature knew of BOTA's denial of exemptions to custom cutters and those who leased farm machinery and equipment. Senate Bill 589 was introduced to resolve this problem. The proposed bill would have amended 79-201(j) to include leased equipment as exempt and allow an exemption for equipment used by custom cutters. The Senate Committee on Assessment and Taxation passed the bill on March 2, 1984, and sent it to the House where it was assigned to the Committee on Assessment and Taxation. The House committee voted to remove leased machinery from the bill, and then voted against reporting the bill out of committee.

Taxpayers claim that no weight can be given to the proposed changes; that any presumption which may arise from such amendment can only be given weight if the amendment is actually enacted into law. This is not necessarily true. Silence by

the legislature may give rise to an implication as to legislative purpose. The fact that the bill died in committee implies that the legislature intended not to exempt such machinery. At the least, it implies that the legislature did not intend to include an exemption for such equipment in the original amendment.

Taxpayers claim that BOTA's interpretation of 79-201j creates an unconstitutional classification of property because classification is based on ownership and not on use of the property.

When reviewing constitutionality of a statute this court must presume the statute is constitutional, all doubts must be resolved in favor of the statute's validity, and before a statute may be stricken down it must be clearly shown that it violates the Constitution. It is the court's duty to uphold the statute under challenge, if possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done. *State ex rel. Stephan v. Martin*, 230 Kan. 747, 641 P.2d 1011 (1982); *Von Ruden v. Miller*, 231 Kan. 1, 642 P.2d 91 (1982); *City of Wichita v. Kansas Corporation Commission*, 225 Kan. 524, 592 P.2d 880 (1979).

It is not for this court to determine whether a prescribed method of taxation is wise, but to determine whether the classification is reasonable and rests upon some ground or difference having a fair and substantial relation to the object of the legislation so that all persons similarly circumstanced shall be treated alike. So long as a classification is reasonable and a tax is uniform and equal as to all subjects of the class, the statute is constitutional. Classifications may be based on differences recognized in the business world, or upon well-grounded considerations of public policy. In this case, the legislature has made a classification based on direct use by farmers and ranchers in their own operations. Other types of uses are excluded. This is a valid classification based on types of businesses and public policy. *Topeka Cemetery Ass'n v. Schnellbacher*, 218 Kan. 39, 542 P.2d 278 (1975); *Associated Rly. Equipment Owners v. Wilson*, 167 Kan. 608, 208 P.2d 604 (1949).

In another chapter of the Kansas statutes, the legislature has defined "farming" as the cultivation of land for the production of agricultural crops, the raising of poultry, the production of eggs, the production of milk, the production of fruit and other horticultural crops, and grazing or the production of livestock. See

K.S.A. 1983 Supp. 17-5903(g). It states specifically that farming does not include a contract to provide spraying, harvesting, or other farm services.

A recognized rule for determining legislative intent is that ordinarily identical words or terms used in different statutes on a specific subject are interpreted to have the same meaning in the absence of anything in the context to indicate that a different meaning was intended. *Callaway v. City of Overland Park*, 211 Kan. 646, 652, 508 P.2d 902 (1973). Based on the preceding rule and the statute, farming would be the cultivation of land for the production of agricultural products and grazing or the production of livestock, not providing a service to those who work the land.

We hold that property owned by a non-tax-exempt entity (Co-op) and leased for profit to a qualifying tax-exempt entity is not being used exclusively for tax-exempt purposes and is subject to ad valorem and property taxes. We also hold that property owned by a non-tax-exempt entity (custom cutters) which provides a service for profit to a qualifying tax-exempt entity is not being used exclusively for tax-exempt purposes and is subject to ad valorem and property taxes.

The judgment is affirmed.

HERD, J., concurs in the result.