In re HARRIS, UPHAM & CO.

No. 30708. April 25, 1944.

*148 P. 2d 191.*

F. M. Dudley and A. D. Howell, for Oklahoma Tax Commission.

Lewis R. Morris, Co. Atty., and B. C. Logsdon, Asst. Co. Atty., both of Oklahoma City, for appellant.

Rainey, Flynn, Green & Anderson, R. M. Rainey, Jr., and Calvin Jones, all of Oklahoma City, for appellee.

OSBORN, J. The question presented by this appeal is whether or not certain brokerage accounts or receivables of the appellee, Harris, Upham & Company, are taxable under the provisions of 68 O. S. 1941 §§ 1501-1520 (art. 4, ch. 66,

S. L. 1939), known as the Intangible Personal Property Tax Act.

Appellee is a copartnership engaged in the securities brokerage business, with its principal place of business in New York. On or before March 1, 1940, appellee filed with the county assessor of Oklahoma county a list of intangible personal property, and at the same time filed a written statement to the effect that it had omitted from the list, and claimed as not taxable, certain debit balances of Oklahoma residents in the amount of $596,800. On May 9, 1940, appellee received notice from the secretary of the board of equalization that a taxable valuation of $596,800 had been placed upon these balances. A protest was filed by appellee with the secretary of the board of equalization. Pursuant to a hearing upon said protest, said board concluded that the property was taxable in Oklahoma county and ordered the same assessed under the Intangible Property Tax Law. An appeal was prosecuted to the district court of Oklahoma county, and a judgment was entered in favor of the appellee canceling the assessment against the debit balances. The district court was of the view that said property had not acquired a taxable situs in this state. From the judgment of the district court, the board of equalization has prosecuted the present appeal to this court, and will be hereinafter referred to as appellant.

The essential facts are stipulated. As heretofore stated, the appellee is a nonresident partnership, having 18 partners, none of whom now lives or resides in Oklahoma; its principal place of business and main offices are at 11 Wall street, New York City. It has numerous branch offices, including three in Oklahoma, located at Tulsa, Oklahoma City, and Bartlesville, and several district offices, including one at Kansas City, Mo. It has no principal place of business or district office in Oklahoma, all three of its Oklahoma offices receiving directions from and being responsible to the Kansas City office. Appellee's business is a brokerage business consisting of buying and selling securities for its customers for a commission. It owns no securities itself. The debit balances hereinabove mentioned are a charge against Oklahoma customers of the Oklahoma City office on appellee's books in its Kansas City office and consist of two items: (a) commissions due appellee, not exceeding the amount of $15,000, and interest on such commissions, not exceeding the amount of $400; and (b) advances made by appellee to said customers in margin transactions, against such customers' securities which appellee holds as collateral, and interest on such advances in an amount totaling $596,800, together with item (a). Said advances were made to the Oklahoma City customers under a form written contract, which contracts are signed and delivered to the Oklahoma City office and are immediately forwarded to the Kansas City office, where they are kept on file permanently. All discretion as to whether to accept such written contracts is exercised by the Kansas City office under a rule of the New York Stock Exchange, which requires that the account of a new customer be approved by a firm partner. One of the firm partners is at the head of the Kansas City office. The amount of credit to be extended to a customer is determined by the Kansas City office. The credits advanced by appellee to its customers are largely obtained through bank loans secured by repledge of the customers' own securities. No part of the funds borrowed by appellee are borrowed in Oklahoma, and practically all of such borrowing is done in New York City by the New York office. None of the sums advanced to Oklahoma City customers is obtained or kept in Oklahoma, and almost all of said sums are obtained and kept in New York City. None of the collateral is kept in Oklahoma, but most of it is kept in New York City. No purchases or sales with Oklahoma customers are consummated in Oklahoma, and practically all of such purchases and sales are consummated in New York City on the New York Stock Exchange or other exchanges by appellee's New York office.

The method of operation of the busi-

ness of the appellee within this state is likewise disclosed by the written stipulation. It appears that the Oklahoma City office is maintained for the convenience of customers who lived in Oklahoma City and vicinity; that the office is equipped with a ticker and board service and is connected by direct wire service with the offices of the partnership at Kansas City and New York City. The Oklahoma City office is under the direct supervision of the Kansas City office. A person in Oklahoma City who wishes to purchase stock may place the order with the Oklahoma City office and the order is transmitted immediately by telegraph to the Kansas City office and relayed to the New York office, or the office of the partnership in the city in which the particular exchange is located, where an employee of the partnership attempts to fill the order. If the order is filled, advice is filed immediately with the Oklahoma City office and the customer is notified. If the order is a cash order, the customer delivers his check to an employee of the Oklahoma City office and the stock certificate is mailed to the customer from the partnership's office in New York.

In the case of margin transactions substantially the same procedure is followed except that the customer does not put up the full purchase price, but only a portion thereof, which is immediately transmitted to the Kansas City office. The partnership then buys for the customer the full number of shares and pays the seller the full price and procures the certificate of stock for the full number of shares, and thereupon, upon its own credit, borrows from a New York bank the difference between the margin deposit put up by the customer and the cost of the stock and deposits the certificate as a pledge or collateral with the New York bank to secure the sum so borrowed. The customer then becomes indebted to the partnership for that amount.

In the case of a short sale the same procedure is followed except that the partnership delivers to the purchaser a certificate for the full number of shares.

All books and records reflecting the purchases and sales of Oklahoma residents are kept at the Kansas City office. No margin transactions involving the purchase or sale of stocks or commodities are filled or completed in Oklahoma, but all of said transactions are completed in the cities where the stock exchanges are located. The partnership lends and borrows no money in Oklahoma, but procures all loans, including those for which the customers' collateral is pledged in connection with margin transactions, in New York City.

Under the provisions of 68 O. S. 1941 § 1501, ". . . Accounts and bills receivable, including brokerage accounts, and other credits, whether secured or unsecured," are defined as intangible personal property. 68 O. S. 1941 § 1504 is, in part, as follows:

"All intangible personal property, as defined in section 1, shall be deemed to have a taxable situs in this state where such property is owned by: . . . (b) A nonresident individual, firm, association, executor, administrator, trustee or other fiduciary, foreign corporation, or other business organization, where such property has acquired a business situs in Oklahoma. . . ."

It must be borne in mind that the Intangible Personal Property Tax Act does not levy a privilege or occupation tax and is not a tax on net income. It is a specific tax in lieu of an ad valorem tax. General Motors Accept. Corp. v. Hulbert, 190 Okla. 568, 125 P. 2d 975. In the case of Grieves v. State, 168 Okla. 642, 35 P. 2d 454, we pointed out that in regard to intangible property the maxim "mobilia sequuntur personam" embodies the general principle in relation to its situs for the purposes of taxation, and that in the absence of controlling circumstances to the contrary, the general rule is that the situs of intangible property for the purposes of taxation is at the owner's domicile, but that intangible personal property may have a business situs otherwise than at the domicile of the owner for the purpose of taxation; that in order to constitute a business situs where intangible property is taxable other than the owner's domi-

cile, it must be shown that possession and control of the property has been localized in some independent business or investment away from the owner's domicile so that its substantial use and value primarily attach to and become an asset of the outside business, and for the purpose of establishing a business situs it is insufficient to show a mere transitory presence of the property for temporary or isolated transactions or for safekeeping or collection. See, also, Chestnut Securities Co. v. Oklahoma Tax Comm., 173 Okla. 369, 48 P. 2d 817; State v. Atlantic Oil Producing Co., 174 Okla. 61, 49 P. 2d 534; State v. Planters Gin Co., 175 Okla. 386, 52 P. 2d 710; Ford Motor Co. v. State, 178 Okla. 193, 62 P. 2d 48. In the case of First Bank Stock Corp. v. Minnesota, 301 U. S. 234, 81 L. Ed. 1061, 57 S. Ct. 677, 113 A. L. R. 228, it was said that in order to establish a "commercial domicile" and to give a business situs, for purposes of taxation, to intangibles which are used in the business or are incidental to it, they must have "become integral parts of some local business," citing Wheeling Steel Corp. v. Fox, 298 U. S. 203, 80 L. Ed. 1145; Farmers Loan & T. Co. v. Minnesota, 280 U. S. 204, 213, 74 L. Ed. 371, 375, 50 S. Ct. 98, 65 A.L.R. 1000; Beidler v. South Carolina Tax Commission, 282 U. S. 1, 8, 75 L. Ed. 131, 133, 51 S. Ct. 54; First Nat. Bank v. Maine, 284 U. S. 312, 331, 76 L. Ed. 313, 321, 52 S. Ct. 174, 77 A. L. R. 1401.

In the case of Westinghouse Electric & Mfg. Co. v. Los Angeles County, 188 Cal. 491, 205 P. 1076, the Supreme Court of California held that solvent credits of a foreign corporation, arising from sales on credit contracted through a sales agency within the state, were incident to the business of the foreign corporation at its domicile and not property in the state subject to taxation. It was pointed out by the court that the authorities were generally in agreement that, where the owner of credits was a nonresident of the state in which the credits were situated, and said credits were in possession and control of a local agent who held them for the purpose of transacting a permanent business and of investing and reinvesting the proceeds from the principal or interest in such manner that the property or credits came in competition with the capital of the citizens of the state in which the agent resided, said credits had a situs for the purpose of taxation in the place of residence of the local agent, but that no situs was acquired where the nonresident who owned the business conducted the same as a branch thereof upon its general corporate capital for the general benefit of its central factories.

In the case of Tax Commission v. Kelly-Springfield Tire Co., 38 Ohio App. 109, 175 N. E. 700, it was held that, in order that credits of a nonresident corporation might be taxed in the State of Ohio, it was necessary to show that the same were committed to the charge and management of an agent or other representative who was more than a mere custodian or collector and who had power to deal in a managerial capacity with the fund represented by the credits. In the case of Lockwood v. Blodgett, Tax Com'r, 106 Conn. 525, 138 Atl. 520, it was said that the mere presence of a specialty or negotiable paper in a jurisdiction other than that of the owner is not a factor in determining the right of that jurisdiction to tax the intangible, but that in order to create a business situs of said property for the purpose of taxation within such jurisdiction, it must be shown that the same was in the hands of an agent for the purpose of collection or renewal with a view to new loans and the carrying on of a permanent business. See, also, annotation and authorities, 76 A. L. R. 819.

In the case of Smith v. Lummus (Fla.) 6 So. 2d 625 (March 6, 1942), there was presented a state of facts practically identical with the fact situation involved herein. Complainant in that case was a copartnership, domiciled in New York, conducting a business as commission broker for purchase and sale of securities on the New York Stock Exchange and other exchanges. The partnership maintained agencies in many cities, one of which was Miami,

Fla. It was the business of the agencies to serve the firm by giving market quotations and other information to prospective customers and by accepting and forwarding orders to the main office in New York for purchase and sale of stocks and commodities. A Florida tax assessor attempted to levy a tax upon the intangible personal property of the copartnership described as accounts receivable or debit balances due from customers purchasing stock through the Florida agency. The method of operating the business of the agency was practically identical with the method in which appellee in the instant case operates its local agency. The holding of the Florida court is as follows:

"Where partnership domiciled in New York where it conducted its business as commission broker for purchase and sale of securities opened a branch agency in Florida for taking orders for purchase and sale of stock, and agents located in Florida had no power to pass on credit standing of any one who applied to purchase stock on margin or to do anything with money received by them other than deposit it in a Florida bank to partnership's account in New York, accounts receivable from customers purchasing stock through Florida agency did not have their 'situs' within state, so as to be subject to personal property tax. Acts 1931, Ex. Sess. c. 15789, sec. 3, Class C; U. S. C. A. Const. Amend. 14; Const. Fla. Declaration of Rights, sec. 12."

Appellant lays emphasis upon the fact that appellee is engaged in carrying on a business in Oklahoma City; that the intangibles arose through the medium of the Oklahoma City office; that the customers reside in Oklahoma City and come in contact with no members or employees of the firm other than those situated at the Oklahoma City office; that the full protection of the laws of Oklahoma is given the Oklahoma operations and the intangibles themselves. These facts are undisputed, but they do not present the elements of decision. We must determine whether or not the property involved herein has acquired a business situs for the purpose of taxation otherwise than at the domicile of the owner. In order to fix such situs in Oklahoma City, it must be shown that possession *and control* of the property has become localized in an independent business or investment in this jurisdiction or that it has become an integral part of a local business. An examination of the evidence in the light of the above authorities discloses that the same is not sufficient to give the property involved herein a local business situs for the purpose of taxation. The duties of the local agency are representative in character. It is not vested with authority to extend credit, approve accounts, or otherwise exercise the judgment and discretion essential to the transaction of the business of the principal. The business is actually transacted outside of this jurisdiction. The local agency is a soliciting and service agency of the principal. It does not operate an independent business of the principal, but performs certain duties and functions ancillary to the business operated at the domicile of its principal in New York.

We find no error in the judgment of the trial court, and the same is affirmed.

GIBSON, V.C.J., and BAYLESS, WELCH, HURST, DAVISON, and ARNOLD, JJ., concur.