No. 53,267

WILLIAM J. VON RUDEN, JR., *Appellant,* v. ANNABELLE MILLER, *Appellee.*

(642 P.2d 91)

Opinion filed March 5, 1982.

*Timothy P. O'Sullivan,* of Schmidt, O'Sullivan & Langley, of Hutchinson, argued the cause and was on the brief for the appellant.

*Kenneth P. Hackler,* special assistant attorney general, argued the cause and *Robert T. Stephan,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is a declaratory judgment action challenging the constitutionality of K.S.A. 1980 Supp. 79-3109, K.S.A. 79-1113 and K.S.A. 1980 Supp. 79-3120a, the intangibles tax and exemptions therefrom.

William J. Von Ruden, Jr., a resident of Reno County, was levied a tax of $29 on his intangible property pursuant to K.S.A. 1980 Supp. 79-3109. He filed this action against Annabelle Miller, Reno County Treasurer, challenging the tax. The trial court held the act and its exemptions constitutional, obligating Von Ruden to pay the tax. This appeal followed challenging the constitutionality of the act.

Let us state at the outset the long-standing and well-established rules of this court when considering the constitutionality of a statute. Constitutionality is presumed, all doubts must be resolved in favor of the statute's validity, and before a statute may be stricken down it must be clearly shown it violates the constitution. It is the court's duty to uphold the statute under challenge, if possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done. *State ex rel. Stephan v. Martin,* 230 Kan. 747, 641 P.2d 1011 (1982); *State ex rel. Schneider v. Kennedy,* 225 Kan. 13, 20-21, 587 P.2d 844 (1978); *City of Wichita v. Kansas Corporation Commission,* 225 Kan. 524, 527, 592 P.2d 880 (1979); *Rogers v. Shanahan,* 221 Kan. 221, 223, 565 P.2d 1384 (1976); *Brown v. Wichita State University,* 219 Kan. 2, Syl. ¶ 3, 547 P.2d 1015 (1976).

Any discussion of the issues involved should be prefaced by noting the relevant constitutional and statutory provisions. Article 11, § 1 of the Kansas Constitution provides:

"The legislature shall provide for a uniform and equal rate of assessment and taxation, except that the legislature may provide for the classification and the taxation uniformly as to class of motor vehicles, mineral products, money, mortgages, notes and other evidence of debt or may exempt any of such classes of property from property taxation and impose taxes upon another basis in lieu thereof."

K.S.A. 1980 Supp. 79-3109 states in part:

"Moneys, notes and other evidences of debt as defined in K.S.A. 79-3108 and acts amendatory thereof, are hereby separately classified for taxation purposes as authorized by section 1 of article 11 of the constitution of the state of Kansas and shall hereafter be taxed annually as hereinafter provided.

"(a) Except as otherwise provided by subsection (b) of this section, any person owning money, notes and other evidences of debt at any time during his or her taxable year ending during the last preceding calendar year shall, as of January 1 of the current year, be subject to a tax equivalent to three percent (3%) upon the total gross earnings received by him or her from such money, notes and other evidences of debt during such taxable year and *such money, notes and other evidences of debt shall be exempt from all other property or ad valorem taxation.* (Emphasis added.)

K.S.A. 1980 Supp. 79-3109(b), in substance, provides the board of county commissioners of any county, the governing body of any city, and the township board of any township, may fix the rate of the tax levied upon money, notes and other evidence of debt having a tax situs in the governmental unit, at a rate other than prescribed in subsection (a). The board of county commissioners may fix the rate at one-fourth of one percent or a multiple thereof not to exceed three-fourths of one percent. The city or township, as the case may be, may fix a rate in the amount of one-fourth of one percent or a multiple thereof not to exceed two and one-fourths of one percent. The respective governing bodies may also elect that no tax be levied, in which case the issue shall be submitted to a referendum upon petition by five percent of the electors. Conversely, if the governing body does not elect to eliminate the tax five percent of the electors may petition for a referendum on that issue. The governing body of any county, city, or township which has voted to eliminate the tax is authorized to impose and levy any other tax which may be authorized by law or to increase its ad valorem tax levy to offset the revenue loss.

K.S.A. 79-1113 provides:

"**National banking associations and banks and corporations holding stock therein; exemption from intangibles tax.** Shares, shares of stock or other evidence of ownership of national banking associations and banks located or doing business within the state, and all income therefrom and the shares, shares of stock or other evidence of ownership of corporations holding stock of a national banking association or bank located or doing business in Kansas, to the extent the income of such corporation is attributable to dividends received on such stock, and all income therefrom, shall be exempt from the tax imposed on moneys, notes and other evidences of debt by K.S.A. 79-3109 and any amendments thereof."

K.S.A. 1980 Supp. 79-3120a provides:

"**Money, notes and other evidences of debt exempt from taxation.** The following shall be and are hereby exempt from taxes levied under the provisions of

K.S.A. 1979 Supp. 79-3109, and amendments thereto, and from all other property or ad valorem taxes levied under the laws of the state of Kansas:

"(a) Notes secured by mortgages on real estate, which mortgages have been recorded in this state and the registration fee or tax thereon paid, as otherwise provided by law;

"(b) all moneys, notes and other evidences of indebtedness held by the trustee of a qualified trust described in section 401, 408 or 501(c)(4), (5), (9), (17) or (18)) of the internal revenue code of 1954, as amended (26 U.S.C. 401, 408 or 501(c)(4), (5), (9), (17) or (18)) which is part of a stock bonus, pension or profit-sharing plan of an employer for the exclusive benefit of employees or their beneficiaries or health and welfare plan;

"(c) money, notes and other evidences of debt, to the extent of the tax liability hereinafter provided, which is owned by a person who has a disability or was sixty (60) years of age or older on January 1 of the year in which an exemption is claimed hereunder. The exemption allowable under this subsection shall be in an amount equal to the lesser of the following: (1) The amount of the tax liability on the first three thousand dollars ($3,000) of gross earnings from said money, notes and other evidences of debt; or (2) the amount of the tax liability on the first three thousand dollars ($3,000) of gross earnings from said money, notes and other evidences of debt reduced by the amount that the owner's income exceeds twelve thousand five hundred dollars ($12,500), including in such owner's income the income of such person's spouse, in the year next preceding that in which the exemption is claimed under this subsection. No person shall be eligible to claim an exemption hereunder in the same year in which such person's spouse has claimed an exemption hereunder. As used in this subsection, the terms 'income' and 'disability' shall have the meanings ascribed to them in K.S.A. 1979 Supp. 79-4502, and amendments thereto;

"(d) money, notes and other evidence of debt upon which the board of county commissioners of the county and governing body of the city of situs or the board of county commissioners and the township board of situs have provided by ordinance or resolution that there shall be no taxes levied upon in accordance with subsection (b) of K.S.A. 1979 Supp. 79-3109, and amendments thereto; and

"(e) money, notes and other evidence of debt owned by any credit union."

A brief history of the applicable law will be helpful. Article 11, § 1, contains the notorious uniform and equal clause of the Kansas Constitution. It has been hailed as a savior by property owners with uninflated value and as absolute confiscation by property owners whose property is inflated in value. It was adopted as a part of the original constitution and was unamended until 1924. Prior to the amendment all property in the state, except that exempted by statute or the constitution, was required to be uniformly assessed at its fair market value in money and equally taxed within its taxing district. There was only one class of property for tax purposes. The assessing was accomplished by township trustees and county clerks. They were untrained and

tended to view fair market value as the lowest possible value they could get by with, particularly since the taxpayer was often a neighbor and the assessor had similar property. Intangibles presented a troublesome problem because money and evidence of debt had a stated value, thus presenting no opportunity to lower values to the ridiculous levels placed on tangible property. The only remaining method to satisfy the constitutional mandate of uniform and equal was to assess tangibles at comparable values to the stated values of intangibles. Even though the increased assessed valuation would in theory lower levies accordingly, this solution was unacceptable to property owners. They did not trust local authorities to put this theory into practice. After two unsuccessful attempts, article 11, § 1, was amended in 1924 by adding the language, "except that mineral products, money, mortgages, notes and other evidence of debt may be classified and taxed uniformly as to class as the legislature shall provide." No longer was there a need to compare tangible values with intangible values. The constitutional changes awaited only statutory implementation. In 1931 an implementing statute separately classifying money, notes and other evidences of debt and imposing a statewide levy of "five mills on the dollar of actual value thereof . . ." was enacted. L. 1931, ch. 311, § 2; ch. 312, § 2. In *Hunt v. Eddy,* 150 Kan. 1, 90 P.2d 747 (1939), this court held the taxation of shares of stock at this rate was valid, finding the 1924 amendment intended to include common stock within the definition of other evidence of debt. Later, in *Commercial National Bank v. Board of County Commissioners,* 201 Kan. 280, 440 P.2d 634 (1968), this court again construed the 1924 amendment. There it was held that, in light of the exception allowing separate classification of intangibles, the assessment of intangible property at its actual value, while tangible property was assessed at thirty percent of fair market value, did not violate article 11, § 1.

Intangible property continued to be the subject of concern even after the 1924 amendment and the 1931 implementation statute. Since intangibles are transitory and easy to hide, the tax was the subject of wholesale evasion. For instance, as found in 1955 by the Citizens Advisory Commission Study, Kansas residents owned $691,000,000 in common stocks while the assessed value of both stocks and bonds in Kansas that year was only

$39,000,000. This study led to the 1959 enactment of K.S.A. 79-3109, giving the owner of intangible property the option of paying a tax equivalent to three percent of the total gross earnings therefrom for the past year or paying the previously established tax of five mills on each dollar of actual value. The 1959 statute was enacted to encourage intangibles taxpayers to comply with the law. L. 1959, ch. 388, § 1. In 1970, the five mill option was eliminated leaving the tax on intangible property at three percent of gross earnings. L. 1970, ch. 390, § 1.

In 1974, article 11, § 1 was again amended to allow motor vehicles among the categories permitted to be separately classified. Also added was the following general provision important to this discussion:

"[O]r may exempt any of such classes of property [motor vehicles, mineral products, money, mortgages, notes and other evidence of debt] from property taxation and impose taxes upon another basis in lieu thereof."

Exemptions from intangibles taxes provided for in K.S.A. 1980 Supp. 79-3120a were first enacted in 1974. L. 1974, ch. 437, § 2. The provision for intangibles tax local option, K.S.A. 1980 Supp. 79-3109(b) was added in 1976. L. 1976, ch. 425, § 1(b).

Let us now consider Von Ruden's challenge section by section, as briefed, even though it will entail some repetition.

For his first issue Von Ruden argues K.S.A. 1980 Supp. 3109(a) violates the uniform and equal clause of article 11, § 1, applicable to all property in the state, citing *Hines v. Leavenworth,* 3 Kan. 186 (1856). Appellee Miller counters with the contention the intangibles tax is an excise tax and therefore exempt from the uniform and equal requirement which applies only to ad valorem taxes. See *Hartman v. State Commission of Revenue and Taxation,* 164 Kan. 67, 70, 187 P.2d 939 (1947). The reason for the distinction between ad valorem and excise taxes was stated in *City of Newton v. Atchison,* 31 Kan. 151, 155-56, 1 Pac. 288 (1883):

"[Article 11, §1] obviously refers to property, and not to license taxes.

. . . .

"In *Baker v. City of Cincinnati,* 11 Ohio St. 540, the supreme court, upon kindred constitutional sections, makes these observations:

" 'Now neither of these sections, in terms, prohibits granting licenses and making a charge therefor, or the imposition of a tax on a license. The second section requires the taxing of all property by a uniform rule. A license cannot be regarded as property. [Citation omitted.] It is not, therefore, to be taxed as

property under that section. An express direction to impose a tax on all property by a uniform rule does not necessarily exclude taxation upon that which is not property, or cover the whole ground included within the limits of the taxing power.' "

Ad valorem and excise taxes were then further distinguished in *Callaway v. City of Overland Park*, 211 Kan. 646, 651, 508 P.2d 902 (1973):

"The term 'excise tax' has come to mean and include practically any tax which is not an *ad valorem* tax. An *ad valorem* tax is a tax imposed on the basis of the value of the article or thing taxed. An excise tax is a tax imposed on the performance of an act, the engaging in an occupation or the enjoyment of a privilege."

The foregoing clearly illustrates the dichotomy. Let us proceed to examine the intangibles tax for the purpose of determining its identity.

Since K.S.A. 1980 Supp. 79-3109(*a*) bases the intangibles tax on three percent of gross earnings, not value, it is clearly not an ad valorem tax. The trial court held the tax was not ad valorem without specifically stating it was an excise tax. Although *Callaway* noted, as a practical matter, that an excise tax includes practically any tax which is not an ad valorem tax, this is not invariably true. The Kansas intangibles tax fits neither the definition of an ad valorem tax nor an excise tax, which includes income taxes, defined in article 11, § 11, and K.S.A. 79-3201 *et seq.*, as a tax on net income. The history of the tax previously set out shows that until the 1958 amendment providing for the percentage of earnings option, it was clearly a property tax. The wording of K.S.A. 1980 Supp. 79-3109(*a*) supports the conclusion the Kansas intangibles tax is considered a property tax. That statute states:

"[A]ny person *owning* money, notes and other evidence of debt . . . shall . . . be *subject to a tax equivalent* to three percent (3%) upon the total gross earnings . . . and such money, notes, and other evidences of debt shall be exempt from all *other property* or ad valorem taxation." (Emphasis added.)

A discussion of the Ohio intangibles tax in *Benua v. Columbus*, 170 Ohio St. 64, 68-69, 162 N.E.2d 467 (1959), is informative:

"In its program of providing revenues by property taxation, Ohio makes a levy based on the ownership of both real and personal property and, in the latter category, on the ownership of both tangible and intangible property. Various formulae exist for the determination of the *amount* of tax to be paid on account of the ownership of these various kinds of real and personal property, but in each

instance the *fact* of taxation is based upon the ownership. In the case of intangible personal property  . . . .  the amount of the tax to be paid is based upon the revenue produced. The tax, however, continues to be levied on account of the ownership of the securities and not on the revenues, revenue production only being used as the measure of the tax as a matter of equity and convenience. This does not alter the fact that the tax levied by the state of Ohio on account of the ownership of a share of dividend-paying stock is just as much a tax on property as is the tax levied upon a parcel of land  . . . .

"[A] tax levied on account of the ownership of intangible property does not become an income tax simply because the amount of the tax is determined from or *'based on the income yield'* of the intangible property."

In *Associated Rly. Equipment Owners v. Wilson,* 167 Kan. 608, 208 P.2d 604 (1949), construing G.S. 1947 Supp. 79-907 which imposed a tax of two and one-half percent of the gross earnings received "by reason of the use or operation" of railroad cars owned by out-of-state persons or companies but leased to railroads operating within this state, it was held that, although the tax was not based on *ownership,* it was nonetheless a property tax. The court stated, "The tax on the property is merely measured by a percentage of the gross earnings received from the use and operation of the property within the state." 167 Kan. at 618. We conclude the Kansas intangibles tax is a specific property tax.

Appellant confuses the terms property tax and ad valorem tax. They are not synonymous. Although the intangibles tax is a property tax, it is not, as discussed, an ad valorem tax. Property taxes may be either ad valorem or specific, although they are usually ad valorem. Specific taxes are of a fixed amount by the head or number, or by some standard of weight or measurement, and require no assessment other than a listing or classification of the subjects to be taxed. 71 Am. Jur. 2d, State and Local Taxation § 20, p. 355. Other states with intangibles taxes based on a percentage of gross earnings have construed them as specific taxes on property. See *Bennett v. Evatt,* 145 Ohio St. 587, 62 N.E.2d 345 (1945); *In re Harris, Upham & Co.,* 194 Okla. 155, 148 P.2d 191 (1944); *Shivel v. Kent County Treasurer,* 295 Mich. 10, 294 N.W. 78 (1940). In *Shivel* and *Harris* it was held that since the Michigan and Oklahoma constitutions respectively allowed for the imposition of specific taxes as exceptions or in lieu of ad valorem taxes, the uniform and equal requirement of their constitutions was not applicable to the intangibles taxes at issue.

The 1924 amendment to article 11, § 1, which separately classified intangibles for tax purposes, furnishes the authority for

removing intangible property from the uniform and equal clause of the constitution. It is inherent in the term "separately classify" that the separately classified property be dealt with in a manner different from other property. Different treatment means nonuniform and permissibly unequal treatment. As stated in *Commercial National Bank v. Board of County Commissioners,* 201 Kan. at 283, the uniform and equal clause of article 11, § 1, does not apply to intangible property. However, article 11, § 1 also contains the provision that separately classified must be uniform within its class. Since this section of the statute provides for a statewide levy on all intangible property, it is clearly in compliance with article 11, § 1 in all respects. K.S.A. 1980 Supp. 79-3109(*a*) is not in violation of article 11, § 1. Appellant's first issue is without merit.

For his next issue appellant contends K.S.A. 1980 Supp. 79-3109(*a*) violates the Equal Protection Clause of the 14th Amendment of the U.S. Constitution. In *State ex rel. Tomasic v. Kansas City, Kansas Port Authority,* 230 Kan. 404, Syl. ¶ 15, 636 P.2d 760 (1981), we held article 11, § 1, is substantially identical to the principle of equality embodied in the Equal Protection Clause of the 14th Amendment, and stated the rule:

"States are subject to the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution in the exercise of their taxing power, but flexibility and variety appropriate to reasonable taxation schemes are permitted. The state taxation scheme must have a rational basis with classifications based on differences having a fair and substantial relation to the object of the legislation."

In *Commercial National Bank v. Board of County Commissioners,* 201 Kan. 280, we discussed the need, rationale and legislative scheme for separate classification of intangible property for tax purposes. A rational basis for the separate classification of intangible property clearly exists making taxation of it, on a basis different from other classes of property, reasonable. K.S.A. 1980 Supp. 79-3109(*a*) does not violate the Equal Protection Clause of the 14th Amendment.

Let us next consider K.S.A. 1980 Supp. 79-3109(*b*) which appellant contends is in violation of article 2, § 1, as an unlawful delegation of legislative authority and in violation of article 11, § 1, and the Equal Protection Clause of the 14th Amendment, as being a tax not uniform as to class.

As we previously stated, this section of the statute provides

counties, cities and townships may reduce or eliminate their part of the three percent statewide tax on gross revenue of intangible property, subject to petition and referendum by the electors of the municipality.

Let us examine the local option provisions. The legislative power of the state is vested in the House of Representatives and Senate by article 2, § 1. However, article 2, § 21, authorizes the legislature to confer power of local legislation upon political subdivisions. See *State, ex rel. v. Hardwick*, 144 Kan. 3, 6, 57 P.2d 1231 (1936). Article 12, § 5 confers home-rule power to cities. In *Claflin v. Walsh*, 212 Kan. 1, 509 P.2d 1130 (1973), we discussed home-rule limitations:

"The home rule power of cities is not absolute. It is subject to the power of the legislature to act in certain areas - exclusively in some, optionally in others. These limitations on city power are expressly set forth in the home rule amendment. Section 5(*a*) of the constitutional provision cited in full above vests absolute and exclusive power in the legislature in regard to the procedure for incorporating cities, the methods of altering boundaries, the methods by which cities may be merged or consolidated, and the methods by which cities may be dissolved. Statutory enactments in these areas are not subject to the exercise of home rule power by charter ordinance.

"The optional powers of the legislature are set forth in Section 5(*b*) as limitations or exceptions to the exercise of home rule power by cities. The home rule power is subject to optional control by legislative action in four specific areas:

"(1) Enactments of statewide concern which are applicable uniformly to all cities.

"(2) Other enactments of the legislature applicable uniformly to all cities.

"(3) Enactments applicable uniformly to all cities of the same class limiting or prohibiting the levying of any tax, excise, fee, charge or other exaction.

"(4) Enactments of the legislature prescribing limits of indebtedness." 212 Kan. at 7.

It should be noted that none of the foregoing constitutional provisions confer on local governments the power to legislate statewide issues.

In analyzing this problem the first question to be determined is whether the intangibles tax is a state issue or a local issue. If it is a local matter there is no constitutional impediment to the statute. It has some aspects of both categories. Under K.S.A. 1980 Supp. 79-3109(*a*), persons owning intangibles are "subject to a tax equivalent to three percent (3%) upon the total gross earnings received" therefrom. A property owner is required to file a tax return with the state director of property valuation or director of

taxation reporting the gross earnings. K.S.A. 79-3111. The tax payable thereon is then certified back to the county clerk of the county of residence of the taxpayer by the secretary of revenue. The tax is collected and distributed by the county treasurer along with other local taxes. The levy is set by the state. Local units of government may take affirmative action and lower or eliminate the levy under K.S.A. 1980 Supp. 79-3109(*b*). If no local action is taken, the statewide levy applies. It thus appears the intangibles tax is in reality a statewide tax which local units of government are authorized to vary or eliminate. It is not subject to home rule because it is of statewide concern, uniformly applicable to all cities. Therefore, it is not a local matter and does not fall under the provisions of article 2, § 21, authorizing the legislature to confer powers of local legislation upon political subdivisions. It is argued the delegation of legislative authority to local government to reduce or eliminate the intangibles tax levy is comparable to the delegation of authority to local government to set ad valorem tax levies. The comparison is inappropriate. The intangibles tax is a statewide levy fixed by the legislature and has no relationship to program or need. On the other hand, ad valorem tax levies are controlled by the program they fund. They are set by calculating the taxing unit's assessed valuation, adopting a budget, crediting carryover funds and state funds, then dividing the adjusted budgeted amount into the assessed valuation. The resulting quotient is the levy. This process is subject to the legislatively imposed limitation of budget and levies. The setting of a local ad valorem tax levy is the result of mathematical calculation involving no discretion. Thus, with ad valorem taxes, the local act of setting levies is an administrative act. See *Board of County Commissioners v. Brookover*, 198 Kan. 70, 422 P.2d 906 (1967). Therefore it is not in violation of the general rule that the legislative power cannot be delegated. 71 Am. Jur. 2d, State and Local Taxation § 144, p. 466, states:

"Furthermore, it is recognized that certain aspects of the taxing process are not legislative in the sense that they may not be delegated to other governmental agencies, or even to individuals, if, in making such delegation, the legislature retains sufficient and proper control over those elements of the taxing function which are nondelegable. Thus, a distinction is drawn between the elements that enter into the imposition of a tax and the ministerial and administrative steps taken for its assessment and collection; the latter being delegable, the former not. In the light of this distinction, a state legislature cannot delegate to an adminis-

trative board the power to determine the rate of taxation, or to say whether or not taxes shall be collected at this or that rate. It may, however, be laid down as a general proposition that where a legislature enacts a specific rule for fixing a rate of taxation, by which rule the rate is mathematically deduced from facts and events occurring within the year and created without reference to the matter of that rate, there is no abdication of the legislative function, but, on the contrary, a direct legislative determination of the rate."

The Ohio Supreme Court in defining legislative power concluded:

"The true distinction, therefore, is, between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made." *C. W. & Z. Rail Road Co. v. Commissioners of Clinton County*, 1 Ohio St. 77, 88-89 (1852).

The grant of authority to local government to reduce or eliminate the intangibles levy is legislative, giving local government total discretion to change the law even to the extent of increasing ad valorem taxes beyond the statutory limit to replace the lost intangibles tax. In *State, ex rel. v. Hines*, 163 Kan. 300, 302-03, 182 P.2d 865 (1947), we commented on the delegation of legislative authority:

"If the powers sought to be delegated are legislative in character, as distinguished from administrative, ordinarily they cannot be delegated unless their delegation is authorized by some express provision of the constitution or the authorization arises by reason of clear implication therefrom. Such a result follows from the doctrine of separation of the powers of government."

We are forced to conclude the intangibles tax is a statewide tax and K.S.A. 1980 Supp. 79-3109(*b*) authorizes local governments to legislate a local reduction of or total exemption from the tax as they determine in their discretion. This is an unauthorized delegation of legislative authority contrary to article 2, § 1, of the Kansas Constitution.

This holding is dispositive of the issue. Thus, there is no need to discuss the other constitutional challenges to K.S.A. 1980 Supp. 79-3109(*b*).

Finally, appellant challenges the exemptions provided for in K.S.A. 1980 Supp. 79-3120a and K.S.A. 79-1113, as violative of article 11, § 1, and the equal protection clause of the 14th Amendment.

As we noted above, where constitutional challenges have been

made to tax exemption schemes as violative of article 11, § 1, we have consistently held this provision is, in principle and effect, identical to the principle of equality embodied in the Equal Protection Clause. *State ex rel. Tomasic v. Kansas City, Kansas Port Authority,* 230 Kan. at 426. The standard under article 11, § 1, is that the legislature may provide statutory exemptions· if such exemptions have a public purpose and promote the general welfare. 230 Kan. 404, Syl. ¶ 3. The standard under the Equal Protection Clause is that the taxation scheme must have a rational basis with classifications based on differences having a fair and substantial relation to the object of the legislation. 230 Kan. 404, Syl. ¶ 15.

K.S.A. 79-1113 exempts shares of stock of national banking associations from the intangibles tax. Such shares are, however, subject to tax under K.S.A. 1980 Supp. 79-1107. An exemption which is designed to prevent double taxation satisfies equal protection. 71 Am. Jur. 2d, State and Local Taxation § 314. As such, article 11, § 1, is not violated.

K.S.A. 1980 Supp. 79-3120a(*a*) exempts notes secured by real estate mortgages on which a mortgage registration fee has been paid. Again, the exemption prevents double taxation.

The remaining exemptions must be viewed in light of the rule that where private property is involved, as opposed to property owned by governmental units, an exemption, to be valid, must be based on the use of the property and not on the basis of owner-ship alone. *Topeka Cemetery Ass'n v. Schnellbacher,* 218 Kan. 39, 542 P.2d 278 (1975).

At first blush K.S.A. 1980 Supp. 79-3120a(*b*) appears to be an exemption based on ownership. But a close analysis reveals this exemption is actually based on the use of the property as a means of funding IRA qualified retirement plans. Thus, this exemption accomplishes the same purpose as the IRA qualified plans, *i.e.,* deferred taxation of retirement funds.

It is argued K.S.A. 1980 Supp. 79-3120a(*c*) is also an exemption based on the ownership of intangible personal property by low income elderly or disabled persons. However, a use-based clas-sification is present here. It is reasonable to assume that persons in this category use the income generated by this property as a primary means of support. By exempting the income generated by intangibles owned by low income persons, more funds remain in

their households and the amount of public assistance outlay is thereby reduced. Obviously, the statute serves a public purpose and is based on the use of the property. It is of note that this exemption differs from the provision reducing the assessed value of certain farm machinery and equipment found unconstitutional in *State ex rel. Stephan v. Martin,* 227 Kan. 456, 608 P.2d 880 (1980). That provision did not *exempt* such property from taxation based on a purpose promoting the general welfare. Rather, it purposely sought to alter the assessment rate of particular property for the purpose of benefiting a particular class of persons suffering economic distress.

K.S.A. 1980 Supp. 79-3120a(*d*) exempts the intangible property from taxation which was previously exempted by local taxing units. It is a mere ratification of constitutionally impermissible action and therefore unconstitutional.

The classification in K.S.A. 1980 Supp. 79-3120a(*e*) is also use-based. That statute exempts "money, notes and other evidences of debt owned by a credit union." A credit union is a nonprofit organization "incorporated for the purpose of creating a source of credit at a fair and reasonable rate of interest, of encouraging habits of thrift among its members, and of providing the opportunity for people to use and control their money for their mutual benefit." K.S.A. 1980 Supp. 17-2231(*c*). Thus, it appears credit unions are established under state law for a public purpose and promote the general welfare. The statutory exemption accomplishes this public purpose.

We hold the tax on intangible property to be a specific property tax rather than an ad valorem tax. Article 11, § 1 specifically authorizes separate classification of intangible property and taxation on some basis other than value. K.S.A. 1980 Supp. 79-3109 imposes a statewide tax. K.S.A. 1980 Supp. 79-3109(*b*) and 79-3120a(*d*), which authorize local units of government to reduce or eliminate the tax on intangible property, is an unauthorized delegation of legislative authority in violation of article 2, § 1. K.S.A. 1980 Supp. 79-3109(*b*) and 79-3120a(*d*) are declared unconstitutional and severed from the act under authority of K.S.A.79-3119. This opinion shall apply prospectively. We hold the remainder of K.S.A. 1980 Supp. 79-3109 and 79-3120a to be constitutional.

The judgment of the trial court is affirmed in part and reversed in part consistent with this opinion.

MCFARLAND, J., concurring in part and dissenting in part. I concur with those portions of the majority opinion which uphold the validity of the challenged statutes and dissent from those portions of the majority opinion which invalidate the statutes as unlawful delegations of legislative authority in contravention of article 2, § 1, of the Kansas Constitution.

The majority opinion's discussion of the issues commences with the following:

"Let us state at the outset the long-standing and well-established rules of this court when considering the constitutionality of a statute. Constitutionality is presumed, all doubts must be resolved in favor of the statute's validity, and before a statute may be stricken down it must be clearly shown it violates the constitution. It is the court's duty to uphold the statute under challenge, if possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done."

This is an accurate statement of the basic rules which are to be assiduously followed by this court in determining the constitutionality of a statute. In the context of the majority opinion, however, these fundamental limitations on judicial authority are mere perfunctory regurgitations of prefatory material.

Specifically, the majority holds:

"The provision of K.S.A. 1980 Supp. 79-3109(b) authorizing local units of government to reduce or eliminate the statewide intangibles tax levy is an unauthorized delegation of legislative authority to local government in violation of article 2, § 1, of the Kansas Constitution." Syl. ¶ 7.

K.S.A. 1980 Supp. 79-3120a(d) is struck down as being "a mere ratification of constitutionally impermissible action." In essence, the majority piggybacks the invalidity of this latter statute upon the shoulders of the invalidity of K.S.A. 1980 Supp. 79-3109(b). For purposes of this dissent, I shall refer hereafter only to 79-3109(b) as having been invalidated. For further simplification, I shall refer to the "counties" or "local unit" as having the right to reduce or eliminate the intangibles tax, although 79-3109(b) grants such rights to cities and townships under certain circumstances.

I believe the underlying error in the majority opinion is a misconception of the basic nature of the tax involved herein. Repeatedly, the majority refers to intangibles tax as a "*statewide tax*" or "*statewide levy*." The inference arising from the usage of these terms is that the intangibles tax is a *state tax* which the local

units of government have been unlawfully delegated power to modify. This is simply not the situation.

K.S.A. 1980 Supp. 79-3109 provides in relevant part:

"Moneys, notes and other evidences of debt . . . *shall* hereafter *be taxed* annually *as hereinafter provided.*

"*(a) Except as otherwise provided by subsection (b)* of this section, *any person owning money, notes and other evidence of debt* . . . *shall* . . . *be subject* to a tax equivalent to three percent (3%) upon the total gross earnings received by him or her from such money, notes and other evidences of debt . . . .

"*(b)* the *board of county commissioners* . . . *may* . . . *fix the rate of the tax levied for the benefit of such county upon money, notes and other evidence of debt* having a tax situs in such county *at a rate other than the rate prescribed in subsection (a) of* this section . . . . *Such board may* . . . in lieu of prescribing a rate of taxation, *elect that no tax shall be levied for the benefit of such county upon money, notes, and other evidence of debt* . . . ." (Emphasis supplied)

I believe a fair paraphrasing of this statute is:

Taxation of intangible property shall be as hereinafter provided:

Unless the tax is reduced or wholly eliminated by the county as provided by (*b*) of this statute, intangible property is subject to a tax of three percent of its gross earnings.

As noted in the statute, the tax is for the benefit of the county. When the state levies taxes against classes of property, it does so specifically. Illustrative thereof is K.S.A. 76-6b01 which provides:

"There is hereby levied an annual permanent state tax of one mill upon all tangible property in this state which is subject to ad valorem taxation, and such tax levy shall be made each year until changed by statute. Such tax levy shall be in addition to all other state tax levies authorized by law. Such tax levy shall be for the use and benefit of the state institutions of higher education. The proceeds of such tax levy shall be apportioned in accordance with this act.

"The county treasurer of each county shall make the proceeds of the tax levy provided for in this section available to the state treasurer immediately upon collection. When available the state treasurer shall withdraw from each county the proceeds of the taxes raised by such tax levy. Upon such withdrawal the state treasurer shall deposit the same in the state treasury and shall credit the same as provided in K.S.A. 76-6b02."

See also K.S.A. 76-6b04. The constitutional authority for these levies is article 6, § 6, and article 7, § 6, respectively. These tax levies are state tax levies and the revenues therefrom are state monies.

This is in sharp contrast to the intangibles tax herein. The state does not levy a tax against intangibles. There is no constitutional provision permitting such a state tax levy. Not one cent of revenue raised from the intangibles tax becomes state money.

*Kansas Gas & Elec. Co. v. Dalton,* 142 Kan. 59, 46 P.2d 27 (1935), discussed the procedure whereby the state tax levy is collected by the county and submitted to the state treasurer. See also K.S.A. 79-2917 which provides for deficiency levies "in addition to the regular levy for state purposes."

The intangibles tax is not a state tax. Revenues therefrom are used exclusively at the local level. The reduction or elimination of the intangibles tax in one particular county in no way increases the tax burden in any other county. The taxing unit for the intangibles tax is each individual county—not the state as a whole. Within each taxing unit there is uniformity.

There are numerous examples whereby the legislature authorizes, but does not require, a local unit of government to impose a tax. Some representative statutes are summarized as follows: K.S.A. 12-1220 *et seq.,* does not require a municipality to establish a library, but, if one is established by local choice, a tax may be levied for its establishment and maintenance not to exceed a specified number of mills.

K.S.A. 12-1680 *et seq.,* authorizes cities and counties on a local option basis to levy a set mill amount for programs for the elderly.

K.S.A. 1980 Supp. 12-11a01 is an interesting statute. It provides in relevant part:

"Whenever the board of county commissioners . . . shall by resolution determine that it is essential for the protection of persons and property within such county to provide additional law enforcement services, such board is hereby authorized to levy a tax of not to exceed one-half mill upon all taxable tangible property within such county to pay the costs thereof . . . ."

The majority characterizes the setting of the ad valorem tax levy as a clerical act involving only dividing the adjusted budgeted amount into the assessed valuation. This is certainly true as far as the mechanical aspects of determining the total number of mills needed to raise a particular amount of money in a particular taxing district but is determinative of no issue before us.

The majority refers to the home rule amendment, article 12, § 5, of the Kansas Constitution, in support of its conclusion that the legislature has violated article 2, § 1, by the delegation of author-

ity herein. If the home rule amendment is considered to be pertinent to any issue herein, the following provision should be noted:

"(b) *Cities* are hereby *empowered* to determine their *local affairs* and government *including* the *levying of taxes,* excises, fees, charges and other exactions *except when* and as the *levying* of any tax, excise, fee, charge or other exaction *is limited or prohibited by enactment of the legislature* applicable uniformly to all cities of the same class . . . ." (Emphasis supplied)

The authority of the local unit to reduce or eliminate ·the intangibles tax is directly granted by the legislature and certainly is not a power "limited or prohibited by enactment of the legislature."

It would appear that the majority herein objects primarily to the form of the power granted to the local unit rather than the power itself. Under the majority opinion, the legislature has imposed a "statewide" tax with unlawful delegation to the local unit of authority to modify or eliminate the tax. Presumably, the majority would have no quarrel with a legislative grant of authority to the local unit to impose a tax on intangibles not to exceed three percent of total gross earnings. In my opinion such a technical distinction is one of form rather than of substance.

As previously noted, this court has a duty to uphold the statute rather than defeat it. I would uphold the validity of both K.S.A. 1980 Supp. 79-3109(b) and 79-3120a(d).